[This opinion has been published in *Ohio Official Reports* at 73 Ohio St.3d 679.]

HORTON ET AL., APPELLANTS, *v*. HARWICK CHEMICAL CORPORATION; A.W.
CHESTERTON ET AL., APPELLEES.

ROBERT DERRICK, APPELLANT *v*. JOHN CRANE, INC., ET AL., APPELLEES.

[Cite as *Horton v. Harwick Chem. Corp*., 1995-Ohio-286.]

*Civil procedure—Appropriate summary judgment standard for proving causation in asbestos cases—Torts—Alternative liability cannot apply, when.*

1.  For each defendant in a multidefendant asbestos case, the plaintiff has the burden of proving exposure to the defendant's product and that the product was a substantial factor in causing the plaintiff's injury.

2.  A defendant need not prove that he was exposed to a specific product on a regular basis over some extended period of time in close proximity to where the plaintiff actually worked in order to prove that the product was a substantial factor in causing his injury. (*Lohrmann v. Pittsburgh Corning Corp.* [C.A.4, 1986], 782 F.2d 1156, disapproved.).

3.  Summary judgment is proper in an asbestos case in the same circumstances as in any other case, i.e, when, looking at the evidence as a whole, (1) no genuine issue of material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence, construed most strongly in favor of the nonmoving party, that reasonable minds could only conclude in favor of the moving party.

4.  Alternative liability cannot apply if the defendants' products do not create a substantially similar risk of harm.

Nos. 94-115 and 94-1041—Submitted January 11, 1995—Decided September 13, 1995.)

APPEALS from the Court of Appeals for Montgomery County, Nos. 13872 and 14159.

{¶ 1} These consolidated cases arise from the asbestos-related injuries allegedly suffered by appellants Robert S. Derrick and Edward Horton. Edward Horton worked for Dayton Tire and Rubber Company ("DTR") from 1946 to 1980. During his first four years at DTR, Horton worked in the general services department, where he performed cleaning duties throughout the DTR plant. From 1950 until his retirement, Horton worked as a tire builder, except for one year that he spent as a bias cutter in the tire building department. Horton alleges that his exposure to asbestos fibers at the DTR plant caused him to contract asbestosis, asbestos-related pleural thickening, and small airways obstruction.

{¶ 2} On July 13, 1990, Horton and others filed a personal injury action in the Summit County Court of Common Pleas against various manufacturers and distributors of asbestos products. Mrs. Horton filed a claim for loss of consortium. The part of the case dealing with the Hortons was transferred to the Montgomery County Common Pleas Court on November 15, 1990.

{¶ 3} In 1992, seventeen of the defendants moved the court for summary judgment. On December 30, 1992, the court sustained the motions of thirteen defendants, overruled the motions of two defendants, and struck the motions of two as untimely.

{¶ 4} The Hortons appealed to the Second District Court of Appeals the entry of summary judgment in favor of the thirteen. They eventually dismissed their appeal on the record as to eight, leaving the following five defendants: (1) A.W. Chesterton Company ("Chesterton"), (2) McNeil (Ohio) Corporation ("McNeil [Ohio]"), (3) McNeil-Akron, Inc. ("McNeil-Akron"), (4) Pittsburgh Corning Corporation ("Pittsburgh Corning"), and (5) John Crane, Inc. ("John Crane"). McNeil (Ohio) and McNeil-Akron settled with the Hortons during the pendency of their appeal. On November 23, 1993, the appellate court affirmed the

judgment of the trial court in favor of appellees, Chesterton, Pittsburgh Corning, and John Crane.

{¶ 5} Derrick, a lifetime nonsmoker but for a few months in his youth, worked at DTR from 1942 through 1975, except for two years of military service from 1953 to 1955. Derrick served in a variety of capacities at the plant, including working in the receiving department, as a janitor, and in the Banbury mixer department. He alleges that as a result of his exposure to asbestos fibers in the course of his employment at DTR, he contracted asbestosis and asbestos-related pleural thickening. On February 8, 1991, Derrick filed a personal injury action in Montgomery County Common Pleas Court, alleging that his illness was the direct and proximate result of the shedding of asbestos fibers into the air of his work environment by the defective, asbestos-containing products of the named defendants.

{¶ 6} Fourteen of the defendants moved the trial court for summary judgment. Derrick dismissed six of those defendants on the record, and on July 6, 1993, the court sustained the motions of five of the remaining defendants, and overruled the motion of one other.

{¶ 7} Derrick appealed to the Second District Court of Appeals the entry of summary judgment in favor of four defendants: (1) Chesterton, (2) McNeil (Ohio), (3) Pittsburgh Corning, and (4) John Crane. According to the opinion of the court of appeals, McNeil(Ohio) settled with Derrick after the appeal was filed.

{¶ 8} The appellate court affirmed the trial court's summary judgments in favor of appellees Chesterton, Pittsburgh Corning, and John Crane on March 30, 1994. Derrick appealed to this court and we consolidated his appeal with that of appellants Edward and Dorothy Horton.

{¶ 9} In both of these cases, the appellate court employed the "frequency-proximity" test set forth in *Lohrmann v. Pittsburgh Corning Corp.* (C.A.4, 1986), 782 F.2d 1156, to determine whether plaintiffs' evidence regarding causation was

sufficient to withstand defendants' summary judgment motions. Under the *Lohrmann* test, to escape summary judgment a plaintiff must present evidence of "exposure to a specific product on a regular basis over some extended period of time in proximity to where the plaintiff actually worked." *Id.* at 1162-1163. This court never has specifically adopted the *Lohrmann* test.

{¶ 10} Both plaintiffs presented evidence that during the time that they worked for DTR asbestos-containing products of each of the appellees were present in the facility. The trial and appellate courts held, however, that neither plaintiff demonstrated exposure to any of the appellees' products on a regular basis over some extended period of time in proximity to where the plaintiff actually worked, and therefore granted summary judgment to the appellees.

{¶ 11} These case are before this court upon the allowance of motions to certify the records.

_____

*Michael F. Colley Co., L.P.A.*, *Daniel N. Abraham*, *Thomas F. Martello, Jr.*, and *David K. Frank*, for appellants.

*Baden & Jones Co., L.P.A.*, *Thomas P. Erven* and *Nancy R. Blankenbuehler*, for appellee A.W. Chesterton Company.

*Day, Cook & Gallagher*, *David L. Day* and *Dale D. Cook*, for appellee John Crane, Inc.

*Hermann, Cahn & Schneider*, *Gary D. Hermann*, *Jay H. Salamon* and *Romney B. Cullers*, for appellee Pittsburgh Corning Corporation.

*A. Russell Smith* and *R. Bryan Nace*, urging reversal for *amicus curiae*, Ohio Academy of Trial Lawyers.

*Charles R. Armstrong* and *Carolyn T. Wonders*, urging reversal for *amicus curiae*, United Rubber, Cork, Linoleum & Plastic Workers of America, AFL-CIO, CLC.

*Joyce Goldstein Co., L.P.A.*, and *Joyce Goldstein*, urging reversal for *amicus curiae*, Cleveland Building and Construction Trades Council, AFL-CIO.

*Adams Legal Services* and *Russell J. Adams*, urging reversal for *amicus curiae*, Asbestos Victims of America.

*Davis & Young Co., L.P.A.*, and *Martin J. Murphy*, urging affirmance for *amicus curiae*, Owens-Corning Fiberglas Corporation.

*Ronald G. Rossetti, Jr.*, urging affirmance for *amicus curiae*, Ohio Association of Civil Trial Attorneys.

*Vorys, Sater, Seymour & Pease, Mary Ellen Fairfield, Richard D. Schuster* and *Brent C. Taggart*, urging affirmance for *amici curiae*, Acands, Inc., BF Goodrich Company and the Goodyear Tire & Rubber Company.

*Baker & Hostetler*, *Randall L. Solomon* and *John H. Burtch*, urging affirmance for *amicus curiae*, Center for Claims Resolution.

*Bunda, Stutz & Dewitt*, *Robert A. Bunda*, *Barbara J. Stutz* and *Anne Y. Koester*, urging affirmance for *amicus curiae*, Owens-Illinois, Inc.

_____

**PFEIFER, J.**

{¶ 12} We are asked in this case to set forth the appropriate summary judgment standard for causation in asbestos cases, and specifically, whether Ohio courts should adopt the *Lohrmann* test. While this court is aware of the docketing problems that may exist with asbestos-exposure cases, we will not cause plaintiffs in such cases to carry a greater summary judgment burden than other personal injury plaintiffs. In our view, the *Lohrmann* standard casts judges in an inappropriate role, is overly burdensome, and is unnecessary.

{¶ 13} We are also asked in this case to adopt alternative liability as a possible theory for recovery. This court has recognized the viability of alternative liability in the past, but we find it inappropriate in the cases at hand, since there is no evidence that the defendants' products created a substantially similar risk of harm.

I

**{¶ 14}** In *Pang v. Minch* (1990), 53 Ohio St.3d 186, 559 N.E.2d 1313, paragraph five of the syllabus, this court held that "[w]here a plaintiff suffers a single injury as a result of the tortious acts of multiple defendants, the burden of proof is on the plaintiff to demonstrate that the conduct of each defendant was a substantial factor in producing the harm." In the asbestos cases, the plaintiff also has the burden of proving exposure to asbestos-containing products. *Goldman v. Johns-Manville Sales Corp.* (1987), 33 Ohio St.3d 40, 42, 514 N.E.2d 691, 693.

**{¶ 15}** The *Lohrmann* test purports to be a tool for determining whether a plaintiff's evidence of causation, *i.e.*, whether a particular product was a substantial factor in producing the plaintiff's injury, is sufficient to withstand summary judgment. However, the test creates less a legal standard than a medical or scientific one. Under *Lohrmann*, a product *cannot possibly* cause an injury unless a plaintiff has worked in close proximity to the product on a regular basis for an extended period of time. By employing the *Lohrmann* test, the trial judge usurps the traditional role of the medical or scientific expert, establishing a mechanistic test regarding causation which no contrary expert testimony can overcome. The *Lohrmann* test puts trial judges in the position of having to find, for instance, that sporadic, *intense* exposure to asbestos over an *extended* period of time cannot cause asbestos-related disease.

**{¶ 16}** In effect, the *Lohrmann* test requires judges to take judicial notice that an asbestos-containing product can cause injury only when someone works in close proximity to the product on a regular basis over an extended period of time. Evid. R. 201(B) describes the kind of facts which may be judicially noticed:

"A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."

**{¶ 17}** We certainly cannot say that there is no reasonable dispute as to what level of exposure can cause asbestos-related diseases. In refusing to adopt the *Lohrmann* test in *Schultz v. Keene Corp.* (N.D.Ill. 1990), 729 F.Supp. 609, 615, the court wrote:

"[The] rule * * * flies in the face of evidence which indicates that short periods of exposure—from one day to three months—can cause significant damage to the lungs. *See Workplace Exposure to Asbestos: Review and Recommendations*, U.S. Dep't of Health and Human Servs. and U.S. Dep't. of Labor, DHHS (NIOSH) Publication No. 81-103, at 3 (Nov. 1980)."

**{¶ 18}** Medical science suggests that very limited exposure to asbestos can cause mesothelioma, perhaps the worst of asbestos-related diseases. See, *e.g.*, "Mesothelioma: Has Patient Had Contact With Even Small Amount of Asbestos?," 257 JAMA 1569 (Mar. 27, 1987); New York Academy of Sciences, Cancer and the Worker (1977) 50, cited with approval in *Hardy v. Johns-Manville Sales Corp.* (E.D. Tex. 1981), 509 F.Supp. 1353, 1355, reversed on other grounds, 681 F.2d 334 (C.A.5, 1982).

**{¶ 19}** The temporal aspects of the *Lohrmann* test are scientifically dubious. "The length of time that an individual was exposed to asbestos does not in itself determine how serious the injury will be. Several factors, including individual idiosyncrasy, the intensity of the exposure, and the nature of the contaminant all play a part in the development of the disease." *Schultz*, *supra*, 729 F.Supp. at 615, citing *Zurich Ins. Co. v. Raymark Indus., Inc.* (1987), 118 Ill.2d 23, 37, 514 N.E.2d 150, 156.

**{¶ 20}** The proximity aspect of the *Lohrmann* test also chooses sides in a scientifically disputed area. In these cases, Dr. Kenneth S. Cohen, a registered professional engineer, certified industrial hygienist, and asbestos inspector who holds a PhD in occupational health, testified through affidavit that asbestos fibers can travel significant distances through the air, resulting in substantial asbestos

exposure even to employees who are not working directly or in close proximity to any product containing asbestos.

{¶ 21} Dr. Cohen described in his affidavit the process of "re-entrainment," by which the physical action of air movement, vibration, or physical trauma causes aerodynamically active asbestos fibers and particles to "take flight" and sail into the air. He stated that it was "more likely than not that some of the fibers and particles released in one corner of the [DTR] plant would travel on drafts and air currents throughout the plant, including to its furthest opposite point." Dr. Cohen stated that the theory that a worker would only be exposed to asbestos released in the immediate vicinity of his workplace is a "scientific impossibility," due to the aerodynamic quality of the fibers and the plant's inevitable air turbulence. Dr. Cohen stated that the plaintiffs "were more likely than not substantially exposed to asbestos and talc fibers and particles from all manufacturers whose asbestos and talc containing products were used in the [DTR] facility during the periods they worked there."

{¶ 22} It is not the province of the judge to immediately foreclose the validity of testimony such as Dr. Cohen's. The case that appellee Chesterton cites as the leading case regarding the "fiber drift" theory, *Robertson v. Allied Signal, Inc.* (C.A.3, 1990), 914 F.2d 360, actually recognizes the theory's validity. While allowing the use of the theory only with evidence of frequency and regularity, *Robertson* does nonetheless accept that a worker not in close proximity to the actual product may still inhale the product's fibers:

"The fiber drift theory can not stand alone; it must be supported by evidence showing the frequency of products' use and the regularity of the plaintiff's employment in an area into which there is a reasonable probability that the fibers drifted." *Id*.

{¶ 23} The true worth of testimony like Dr. Cohen's is determined in the jury room when weighed against competing testimony. We are unwilling to close

8

the door on the legitimacy of the "fiber drift" theory in every case in Ohio courts. Indeed, the *Lohrmann* test is the product of the attempts of Maryland federal courts to deal with claims brought by employees of shipyards, workplaces so large that fiber drift might seem impossible. The *Lohrmann* court stressed the immensity of the shipyard in that case as a reason for affirming the district court's use of what later became known as the *Lohrmann* test:

"[W]hen one considers the size of a workplace such as Key Highway Shipyard, the mere proof that the plaintiff and a certain asbestos product are at the shipyard at the same time, without more, does not prove exposure to that product." *Lohrmann*, 782 F.2d at 1162.

{¶ 24} We think it unwise to apply a rule designed for shipyards to workplaces of every size.

{¶ 25} More important, we think it unwise to apply a strict standard rooted in science when the science on the issue is unresolved. *Lohrmann* creates an all-knowing, trumping medical expert that disallows competing scientific viewpoints on the causes of asbestos-related diseases.

{¶ 26} The *Lohrmann* test is the result of the law and public policy outstripping the science at the heart of the asbestos problem. Sometimes when a phenomenon grounded in science creates public concerns, policymakers cannot wait for the science to catch up with those concerns, and a public-policy-generated pseudoscience can be the result. The *Lohrmann* test creates such pseudoscience in an arena where there is a long tradition of leaving science to the experts.

{¶ 27} Also, the *Lohrmann* test invites a trial judge into the domain of the jury. The temporal aspects of the test, frequency and regularity, are subject to an unlimited range of possibilities. How many exposures does it take to meet the acceptable level of frequency? Can a judge be sure that one less exposure could not have caused asbestos-related disease? What is a regular basis? Does intense exposure over a shorter duration reduce the regularity requirement? In regard to

proximity, how close to the product is close enough? Will a few feet make the difference?

**{¶ 28}** The *Lohrmann* test does not call for simple responses which follow directly from a presentation of the evidence. Instead, the test involves a weighing of the plaintiff's evidence on the sliding scale of the test's three loosely defined criteria. The inquiry by the trial judge should be whether there is evidence of exposure and evidence tying that exposure to the disease. Whether that evidence is strong enough to prove causation is an issue for the jury.

**{¶ 29}** Finally, the *Lohrmann* test departs from our standard regarding summary judgment. "Because summary judgment is a procedural device to terminate litigation, it must be awarded with caution. Doubts must be resolved in favor of the nonmoving party." *Davis v. Loopco Industries, Inc.* (1993), 66 Ohio St.3d 64, 66, 609 N.E.2d 144, 145. Plaintiffs in asbestos cases deserve that same degree of caution in their cases. The *Lohrmann* test resolves doubts about causation mechanically in the favor of the defendant from the outset. It stacks the deck against plaintiffs by foreclosing all but one avenue of proof of causation.

**{¶ 30}** For each defendant in a multidefendant asbestos case, the plaintiff has the burden of proving exposure to the defendant's product and that the product was a substantial factor in causing the plaintiff's injury. A defendant need not prove that he was exposed to a specific product on a regular basis over some extended period of time in close proximity to where the plaintiff actually worked in order to prove that the product was a substantial factor in causing his injury.

**{¶ 31}** Instead, we adopt the definition of "substantial factor" contained in Restatement of the Law 2d, Torts (1965), Section 431, Comment *a*:

"The word 'substantial' is used to denote the fact that the defendant's conduct has such an effect in producing the harm as to lead reasonable men to regard it as a cause, using that word in a popular sense, in which there always lurks the idea of responsibility, rather than the so-called 'philosophical sense,' which

includes every one of the great number of events without which any happening would not have occurred."

**{¶ 32}** Summary judgment is proper in an asbestos case in the same circumstances as in any other case, *i.e.*, when, looking at the evidence as a whole, (1) no genuine issue of material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence, construed most strongly in favor of the nonmoving party, that reasonable minds could only conclude in favor of the moving party.

**{¶ 33}** Thus, we decline to establish a formulaic approach in an area which defies that kind of analysis, and therefore do not adopt the *Lohrmann* test. We therefore reverse the court of appeals and remand these cases to the trial court for a determination consistent with this opinion.

II

**{¶ 34}** The theory of alternative liability originated in *Summers v. Tice* (1948), 33 Cal.2d 80, 199 P.2d 1. In *Summers*, the plaintiff and the two defendants went hunting together. The defendants negligently fired their guns simultaneously in the direction of the plaintiff and a pellet struck him in the eye. Since the plaintiff could not identify the responsible defendant, the court shifted the causation burden to the defendants. *Id.* at 86-87, 199 P.2d at 4-5.

**{¶ 35}** Alternative liability had its Ohio genesis in *Minnich v. Ashland Oil Co.* (1984), 15 Ohio St.3d 396, 15 OBR 511, 473 N.E.2d 1199, syllabus, in which this court adopted the doctrine as set forth in 2 Restatement of the Law 2d, Torts (1965), Section 433B(3):

"Where the conduct of two or more actors is tortious, and it is proved that harm has been caused to the plaintiff by only one of them, but there is uncertainty as to which one caused it, the burden is upon each such actor to prove that he has not caused the harm."

**{¶ 36}** In *Minnich*, the plaintiff was injured when ethyl acetate he was using to clean a printing press ignited. The complaint alleged that two companies had supplied ethyl acetate to Minnich's employer; the supplier of the actual ethyl acetate that ignited was unknown, since it had been transferred to an unmarked bottle prior to its use by Minnich. Thus, this court applied alternative liability, since each of the defendants had allegedly supplied an identical, defective product to the plaintiff.

**{¶ 37}** This court first faced the issue of alternative liability in asbestos cases in *Goldman*, *supra*. This court in *Goldman* did not foreclose the possibility of the use of the theory in asbestos cases, but instead explained the limitations of its use therein. In *Goldman*, the plaintiff could not identify any of the defendants as having supplied asbestos materials to his employer. Thus, Goldman could not demonstrate that each of the defendants had acted tortiously. As this court noted, while the theory of alternative liability relaxes the traditional requirement that the plaintiff prove that a specific defendant caused the injury, it applies only where the plaintiff shows that all the defendants acted tortiously. *Goldman*, 33 Ohio St. 3d at 46, 514 N.E.2d at 696.

**{¶ 38}** The factor which makes alternative liability inappropriate in this case was mentioned in dicta in *Goldman*. The present cases lack what was present in the seminal cases in this area: defendants creating a substantially similar risk of harm. In *Summers*, for example, the defendants shot guns with identical ammunition in the direction of the plaintiff. In *Minnich*, both defendants allegedly supplied the same defective chemical to the plaintiff's employer. As this court stated in *Goldman*, "[a]sbestos-containing products do not create similar risks of harm because there are several varieties of asbestos fibers, and they are used in various quantities, even in the same class of product." *Goldman*, 33 Ohio St.3d at 46, 514 N.E.2d at 697. The records in these cases fail to demonstrate that the level of risk posed by each of the defendants' products is substantially similar.

12

**{¶ 39}** In the types of cases traditionally employing alternative liability, the plaintiff is unable even to differentiate between the possible responsible parties. In the within cases, the plaintiffs can at least identify which products they were exposed to most, which contained the highest levels of asbestos, and which were used in a manner more likely to release fibers into the air.

**{¶ 40}** Alternative liability is a unique theory to be employed in unique situations. This court in *Minnich* limited application of the theory to "situations similar to the one at bar." *Minnich*, 15 Ohio St.3d at 397, 15 OBR at 512, 473 N.E.2d at 1200. Alternative liability cannot apply if the defendants' products do not create a substantially similar risk of harm. Since there is no evidence that defendants' products created a substantially similar risk of harm, we will not apply the theory in the within cases. We therefore agree with the appellate court on that issue.

*Judgments reversed and causes remanded.*

MOYER, C.J., concurs in part and dissents in part.

DOUGLAS, RESNICK and F.E. SWEENEY, JJ.., concur in part and dissent in part.

WRIGHT and COOK, JJ., concur in part and dissent in part.

———————————

**MOYER, C.J., concurring in part and dissenting in part.**

**{¶ 41}** I concur in the first, third and fourth paragraphs of the syllabus and in the well-advised decision of the majority to reject the theory of alternative liability. I dissent from the majority opinion because it does not provide the bench and bar with a test that can consistently be applied in asbestos cases. I would adopt the "frequency-proximity" test adopted in the case of *Lohrmann v. Pittsburgh Corning Corp.* (C.A.4, 1986), 782 F.2d 1156. No persuasive argument has been given to persuade me that Ohio should not adopt the test applied in the majority of jurisdictions in the country that have considered the issue.

**{¶ 42}** For the foregoing reasons I would affirm the judgments of the court of appeals.

_____

**DOUGLAS, J., concurring in part and dissenting in part.**

**{¶ 43}** I enthusiastically concur in the clear, cogent and well-reasoned discussion of the majority concerning *Lohrmann v. Pittsburgh Corning Corp.* (C.A.4, 1986), 782 F.2d 1156, and the so-called *Lohrmann* test. I also concur in paragraphs two and three of the syllabus and in the ultimate judgment of the majority even though I must confess that I am unsure what I would do, upon remand, if I were the trial judge. I respectfully dissent from paragraphs one and four of the syllabus and the discussion of the majority in Part II of the opinion concerning alternative liability.

I

**{¶ 44}** Whether the majority does so intentionally or unintentionally, I believe the majority, by today's decision, ends asbestos litigation in Ohio in multidefendant cases. By saying, in the first paragraph of the syllabus, that a plaintiff in such cases "has the burden of proving exposure to *the* defendant's product and that *the* product was a substantial factor in causing the plaintiff's injury" (emphasis added), the majority creates a standard that no plaintiff will ever be able to meet. *Each* defendant in a multidefendant case will say that it was another defendant's product that caused the injury, and a plaintiff, of course, will never be able to show that the injury was caused by, for example, *the* asbestos in the ceiling tiles rather than *the* asbestos which was wrapped around the pipes or heating ducts.

**{¶ 45}** The test for plaintiffs in asbestos cases should be no different from what it is for other plaintiffs in other multidefendant tort cases. In asbestos cases, the test should be that a plaintiff must show that he or she has an asbestos-related illness, that she or he was exposed to an asbestos product of the defendant(s) and

that *exposure* to asbestos was a factor in causing plaintiff's harm. When plaintiff proves these facts by a preponderance of the evidence, the causation burden then shifts to defendants (who typically have better knowledge of their product placement) to show that it was not their product that caused the harm to plaintiff. This then leads to the theory of alternative liability.

II

**{¶ 46}** For its discussion of alternative liability, the majority relies principally on *Minnich v. Ashland Oil Co.* (1984), 15 Ohio St.3d 396, 15 OBR 511, 473 N.E.2d 1199, and dicta in *Goldman v. Johns-Manville Sales Corp.* (1987), 33 Ohio St.3d 40, 514 N.E.2d 691. I believe that neither case is on point and both can be easily distinguished.

**{¶ 47}** It is true that in *Minnich,* we applied, as set forth by the majority herein, alternative liability. The distinguishing feature of *Minnich* from the case at bar is that in *Minnich*, it was clear that the harm had been caused by *one* of two actors but it was unclear which of the actors had caused the harm. This court shifted the burden to both actors for each to prove that, individually, it was not the tortfeasor. In the asbestos cases, the allegation is not that a single tortfeasor caused the injury. Rather, the allegation is that the injury was caused by exposure to asbestos which was placed in the premises by several different actors, all of whom are alleged to be responsible.

**{¶ 48}** The same is true of *Goldman*. In *Goldman*, the plaintiff could not show that *any* of the defendants had provided the asbestos materials alleged to have caused the injury. Not so in the case at bar.

**{¶ 49}** Rather than citing either *Minnich* or *Goldman*, I would cite this court's case of *Huston v. Konieczny* (1990), 52 Ohio St.3d 214, 556 N.E.2d 505, which I find to be more directly on point. In *Huston*, the plaintiff was involved in a beer party at a private home, which was attended by a number of persons, most of whom were under the legal drinking age. Plaintiff Huston left the party in a car

with two other guests. The car was involved in an accident and plaintiff Huston was injured. Plaintiff, along with his parents, sued a number of people, claiming that the defendants had provided (or permitted the providing of) alcohol to minors in violation of law and that this conduct resulted in plaintiff's being injured. Apparently a number of the guests at the party had brought beer with them, and a pony keg of beer and various cans and bottles of beer were commingled in a bathtub. One of the issues in *Huston* presented the question whether a plaintiff, in a multidefendant action, is required to prove the *specific* source of the alcohol that allegedly contributed to plaintiff's injury or whether it is enough, under the alternative liability theory, that two or more defendants committed tortious acts and that plaintiff was injured as a proximate result of the wrongdoing of at least one of the defendants.

{¶ 50} The trial court in *Huston* granted summary judgment to certain defendants. The court of appeals reversed and we affirmed the judgment of the court of appeals. Writing for a five-member majority of this court, Justice Herbert Brown cited 2 Restatement of the Law 2d, Torts (1965), Section 433B(3), which had been adopted by this court in *Minnich*, *supra*. Justice Brown went on to say that: "Comment *f* to subsection (3), *supra*, states that the reason for the exception is the unfairness of permitting tortfeasors to escape liability simply because the nature of their conduct and of the resulting injury has made it difficult or impossible to prove which of them caused the harm. *Id*. at 446. *The exception applies when each of two or more actors has acted tortiously and the harm has resulted from the conduct of one or more of them.* 2 Restatement of the Law 2d, Torts (1965), Section 433B, Comment *g*." (Emphasis added.) *Huston, supra,* 52 Ohio St.3d at 218, 556 N.E.2d at 510. At 219, 556 N.E.2d at 510, *Huston* goes on to say that "[a]pplying these principles to the present case, plaintiffs must show: (1) that the beer furnished to underage persons came from the Cordells, Goodsite or the other named defendants, and (2) that Huston was injured as a proximate result of the wrongdoing

16

*of at least one* of these defendants." (Emphasis added.) Finally, and most tellingly, I believe, we said that "[t]he trial court erred when it granted summary judgment on the basis that plaintiffs failed to prove the *specific source* of the beer consumed by [the alleged driver] Bodnar." (Emphasis added.) *Id.*

{¶ 51} This is precisely the issue now before us. In the case we are now considering, allegedly *all* the defendants before the court supplied products of a similar nature, some or all of which caused the injuries to these plaintiffs. Thus, since the theory of alternative liability is the law of Ohio today, *Huston*, *supra*, we should either follow *Huston* or overrule it. Since the majority does not follow *Huston*, I respectfully concur in part and dissent in part.

RESNICK and F.E. SWEENEY, JJ., concur in the foregoing opinion.

———————————

**WRIGHT, J., concurring in part and dissenting in part.**

{¶ 52} I quite agree with the majority's rejection of the theory of alternative liability in this case and join paragraphs three and four of the syllabus. However, I vigorously disagree with its treatment of the court of appeals' opinion and its rejection of the "frequency-proximity" test adopted in the leading case of *Lohrmann v. Pittsburgh Corning Corp*. (C.A.4, 1986), 782 F.2d 1156, which has been embraced in practically every other jurisdiction which has reviewed asbestos cases.[1]

{¶ 53} The majority and the appellants apparently accept the proposition that "the plaintiff has the burden of proving exposure to the defendant's product and that the product was a substantial factor in causing plaintiff's injury."

---

1. See, *e.g.*, *Jackson v. Anchor Packing Co.* (C.A.8, 1993), 994 F.2d 1295; *Tragarz v. Keene Corp.* (C.A.7, 1992), 980 F.2d 411; *Robertson v. Allied Signal, Inc.* (C.A.3, 1990), 914 F.2d 360; *Menne v. Celotex Corp.* (C.A.10, 1988), 861 F.2d 1453; *Blackston v. Shook & Fletcher Insulation Co.* (C.A.11, 1985), 764 F.2d 1480; *Spaur v. Owens-Corning Fiberglas Corp.* (Iowa 1994), 510 N.W.2d 854; *Sholtis v. Am. Cyanamid Co.* (1989), 238 N.J.Super. 8, 568 A.2d 1196; *Eckenrod v. GAF Corp.* (Pa.Super. 1988), 544 A.2d 50; *Lockwood v. AC & S , Inc*. (1987), 109 Wash.2d 235, 744 P.2d 605.

(Paragraph one of the syllabus.) The majority goes on to state, "[W]e decline to establish a formulaic approach in an area which defies that kind of analysis," and rejects *Lohrmann*. What the majority has done is to adopt no test whatsoever and in the process relegate *Pang v. Minch* (1990), 53 Ohio St.3d 186, 559 N.E.2d 1313, and *Goldman v. Johns-Manville Sales Corp.* (1987), 33 Ohio St.3d 40, 514 N.E.2d 691, to meaningless pronouncements. The majority appears to adopt what, for lack of a better term, could be described as the "fiber drift theory," which, in essence, states that if there is some evidence that a defendant's product was located in or near or somewhere in the vicinity of the place where plaintiff worked then there is potential liability, despite the total absence of a showing of plaintiff's proximity to those products or evidence as to the frequency of the exposures. I have no quarrel with the notion that asbestos particles have the ability to "take flight" and "sail" into the air. Appellant's expert indicates that such particles *might* be released in one corner of a plant and travel by way of drafts and air currents throughout the immediate vicinity of a workplace. However, what is lacking here is any evidence suggesting that any of defendant-appellees' products were a substantial factor in causing the appellants' injuries. I think it goes without saying that under Ohio law, to get past a summary judgment a plaintiff must present evidence creating a probability, not a mere possibility, of a casual relationship between a defendant's conduct or product and the alleged harm. Is there sufficient evidence here to create a jury question where the plaintiffs merely show that there was a possibility that they may have been exposed to the defendants' products where they worked? Perhaps, but I suggest that the plaintiffs must present evidence that would tend to show the circumstances of the exposure, including some idea as to the time, place, and manner in which the product was used and where the plaintiff was in relation to the product. The Second District Court of Appeals did just this and concluded that there was no evidence other than speculation to support the posture of appellants.

{¶ 54} Civ.R. 56, which deals with summary judgment, and our various decisions dealing with it place the trial court in the posture of a gatekeeper, whose role is to take from the jury's province cases which fail to achieve a certain minimum amount of evidentiary proof. This case is surely one that fails the test. Due to the majority's brevity in reviewing the facts, I feel that I should excerpt a portion of the court of appeals' opinion which analyzes the law as it relates to the facts. In its opinion in *Horton* (Nov. 23, 1993), Montgomery App. No. 13872, unreported, at 4-5, the court of appeals correctly noted that in *Lohrmann,* the Fourth Circuit required "a plaintiff to introduce evidence which would allow the jury to reasonably conclude that the conduct of the defendant was a substantial factor in causing the plaintiff's harm. *Id.* [*Lohrmann,* 782 F.2d] at 1162. That requirement was derived from the Restatement (Second) of Torts §431, which defines what constitutes legal cause. *Lohrmann* held that simply showing that asbestos-containing products were present in a large workplace while the plaintiff worked there is not sufficient to meet the 'substantial factor' test because it does not prove that the plaintiff was exposed to the asbestos-containing products. *Id.* Rather, the plaintiff must present evidence to show the frequency of the use of the product and the regularity of the plaintiff's employment in proximity thereto. *Id.*"

{¶ 55} The court of appeals properly stated, "The frequency-proximity test *** is not a test which is distinct from the substantial factor standard; rather, it is a tool to enable a court to determine whether the plaintiff in an asbestos case has put forth sufficient evidence against a defendant to show that a reasonable jury could find that the defendant's conduct was a substantial factor in causing the plaintiff's harm. ***

"*** The frequency-proximity test does not require any greater showing than the substantial factor standard; rather, the test determines when the plaintiff has met his burden under that standard." *Id*. at 6-7.

**{¶ 56}** As noted by the court of appeals, "The basis for this assignment of error is an affidavit filed by the Hortons explaining the fiber drift theory as it relates to DTR. Dr. Kenneth Cohen made the affidavit after an inspection of DTR conducted in 1989. DTR closed a few weeks after Mr. Horton retired in 1980, so inferably the plant was in substantially the same condition at the time of the inspection as it was when he still worked there. Dr. Cohen is a recognized expert in industrial hygiene. The fiber drift theory holds that asbestos fibers can become airborne and drift away from their original source. Through repeated disturbances by such forces as air currents or vibrations, these 'aerodynamically active fibers and particles' can be transported throughout the plant. Based on this theory, Dr. Cohen states that '[a]ny worker whose workplace was within the Dayton Tire and Rubber Company plant was an asbestos and talc breather if asbestos and talc fibers and particles were released within the confines of this facility. The plaintiff workers who worked inside of this facility during use, installation, damage to, repair, or removal of asbestos-containing and talc-containing products during their employment more probably than not suffered substantial occupational exposure to asbestos and talc fibers and particles by breathing them into their lungs ***.'

"Dr. Cohen does not confirm that any asbestos or talc fibers were *ever* released in DTR. He does not name *any* manufacturers of any asbestos or talc present within the plant. He refers to all workers inside of the facility, but he does not account for the fact that there was *more than one* building in the DTR plant. In oral argument, counsel for the Hortons conceded that the fibers would only drift within the contained structures where the asbestos was located." (Emphasis added.) *Id*. at 7-8.

**{¶ 57}** For the foregoing reasons, I would affirm the judgment of the court of appeals.

COOK, J., concurs in the foregoing opinion.

———————————

January Term, 1995