DECISION AND JUDGMENT ENTRY
This appeal and cross-appeal are before the court following the November 17, 2000 judgment entry of the Lucas County Court of Common Pleas granting summary judgment in favor of appellee/cross-appellant, Capital Bank, N.A. ("Capital.") Capital has filed a cross-appeal as to the trial court's findings and regarding the dismissal of its third-party complaint against appellees Sun Coatings, Inc. ("Sun Coatings") and William Free.[1]
The facts of this case are as follows. On all relevant dates, Royal Tool and Sun Coatings were related companies. Each maintained a depository and checking account with Capital. Royal Tool marketed glass fabricating machinery chiefly to the automotive glass companies and William Free was a seventy-five percent owner, officer, director, and shareholder.
The named owners of Sun Coatings, which marketed glass coating machinery, were James Jaros, William Free, Douglas Chambers and Andy Malcom. In addition to being part-owner of Sun Coatings, William Free was a director, officer and shareholder.
The companies shared office space at 5732 Woodville Road in Toledo, Lucas County, Ohio.
On November 25, 1992, Lisa Cowell, Sun Coatings's bookkeeper, issued a written request to Capital to transfer $632,600.48 from Sun Coatings to Royal Tool. The transfer was made on November 27, 1992.
On or about the same date as the transfer, John Szuch, Capital's president, learned of a billing dispute between Royal Tool and Sun Coatings. Szuch was informed by Mike Cicak[2] that there had allegedly been over billing or some sort of wrongdoing on the part of Royal Tool as it related to Sun Coatings. Cicak indicated that Free was not authorized to transfer funds from Sun Coatings to Royal Tool without the joint signature of Jim Jaros. Thereafter, Szuch instructed Rick Brunner, a Capital commercial loan officer, to transfer the money back to Sun Coatings. On November 30, 1992, Brunner contacted Brian Rex,[3] chief financial officer at Royal Tool, and informed him that Capital had become aware of a dispute between it and Sun Coatings and that Capital needed to transfer the money back. Rex indicated that some checks had been written against the transfer amount. It was agreed that $517,600 of the $632,600.48 would be transferred back to Sun Coatings.
Capital, in its ordinary course of business, requires corporate resolutions from its corporate clients indicating the individual or individuals who have the authority to sign checks or transfer funds. It is undisputed that on the date of the transfer the corporate resolution on file at Capital listed William Free and Lisa Cowell as authorized signatories.
A subsequent corporate resolution, dated December 30, 1992, lists as authorized signatories William Free and Brian Rex and required that James Jaros be one of the signers on all checks. This resolution was apparently passed on November 3, 1992, prior to the transfer.
On November 22, 1996, Royal Tool commenced an action against Capital alleging breach of contract, negligence, breach of the duty of good faith and fair dealing, and tortious interference with contractual relations. The action was voluntarily dismissed, without prejudice.
On April 28, 1999, Royal Tool filed a verified complaint against Capital alleging breach of contract and breach of duty of care. Capital filed an answer on May 26, 1999.
On June 1, 1999, Capital filed a third-party complaint against Sun Coatings and William Free for indemnification, contribution, and claiming that Sun Coatings was joint and severally liable for any sums Capital may be required to pay to Royal Tool and any expenses, including attorney's fees, incurred in defending Royal Tool's lawsuit. On August 6, 1999, Sun Coatings filed its answer.
Thereafter, on June 14, 2000, Capital filed a motion for summary judgment as to the claims of Royal Tool. In its motion, Capital argued that pursuant to former R.C. 1304.29(F),[4] the action was time-barred. Capital further argued that Royal Tool was unable to provide any evidence of damages and that a settlement agreement between Royal Tool and Sun Coatings distinguished any obligation on the part of Capital.
Royal Tool's opposition to the motion for summary judgment argued that R.C. 1304.29(F) was inapplicable and that the proper limitations period was fifteen-years for breach of contract. Royal Tool further contended that it was injured by Capital's act of returning the funds to Sun Coatings.
Capital filed a reply in which it raised the applicability of R.C.1304.66. Capital thereafter requested, by motion, that its memorandum in support of summary judgment be supplemented with its discussion of R.C.1304.66, as an additional basis for summary judgment. Said motion was granted and the parties filed briefs as to the applicability of the statute.
In addition to supplementing their memorandum in support of summary judgment, Capital requested and was granted leave to file an amended third-party complaint seeking attorney fees under R.C. 1304.66(F).
On November 17, 2000, the trial court granted judgment in favor of Capital. The court found, however, that the one-year limitations period of former R.C. 1304.29(F), applied only to instances regarding the timely review of canceled checks or deposit receipts as described in R.C.1304.29(A).[5] The court further rejected Capital's reliance on R.C.1304.66, which relates to the cancellation of an unauthorized payment order.
The trial court next dismissed Capital's argument that Sun Coatings and Free were liable based upon the Joint Tortfeasor's Statute.[6] The trial court found that the statute did not apply because the action was a direct action by Royal Tool against Capital and did not involve joint tortfeasors.
The trial court did agree with Capital's argument that Royal Tool could not demonstrate that it was damaged as a result of the transfer. It is on this basis that the trial court granted summary judgment in favor of Capital. Additionally, the trial court dismissed, with prejudice, Capital's third-party complaint against Sun Coatings and William Free.
Following the trial court's November 17, 2000 judgment, the parties commenced the instant appeals. Appellant, Royal Tool, raises the following assignments of error:
 "I. The trial court erred by applying the wrong legal standard to determine that there were no disputed material issues of fact prove [sic] plaintiff's damages.
 "II. The trial court erred by granting defendant's motion for summary judgment on the basis that plaintiff failed to produce evidence that it had suffered damages as a result of defendant's wrongful conduct."
In its cross-appeal, Capital raises the following assignments of error:
 "I. The trial court erred by not finding this case barred by the terms of R.C. 1304.66.
 "II. The trial court erred by not applying the one-year statute of limitations set forth in the former R.C. 1304.29.
 "III. The trial court erred by dismissing the Third-Party Complaint, which was neither before the court on the summary judgment pleadings nor rendered moot by the Judgment in favor of Capital Bank."
We shall first address the merits of Royal Tool's appeal. Royal Tool argues, in its first assignment of error, that the trial court erroneously charged it with the initial burden of presenting sufficient evidence of damages. In its second assignment of error, Royal Tool contends that the trial court wrongly concluded that it failed to produce such evidence. These assignments of error are related and shall be discussed concurrently.
We review the trial court's ruling on a summary judgment motion denovo. Conley-Slowinski v. Superior Spinning Stamping Co. (1998),128 Ohio App.3d 360, 363. To succeed on a Civ.R. 56(C) motion for summary judgment, the movant must demonstrate that:
 "(1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor." Zivich v. Mentor Soccer Club, Inc. (1998), 82 Ohio St.3d 367, 369-370, citing Horton v. Harwick Chem. Corp. (1995), 73 Ohio St.3d 679.
A party claiming to be entitled to summary judgment on the grounds that a nonmovant cannot prove his or her case bears the initial burden of specifically identifying the basis of its motion and identifying the portions of the record which demonstrate the absence of a genuine issue of material fact as to an essential element of the nonmovant's case.Dresher v. Burt (1996), 75 Ohio St.3d 280, 293. The movant satisfies this burden by presenting competent summary judgment evidence, of a type listed in Civ.R. 56(C), affirmatively demonstrating that the nonmovant has no evidence to support his or her claims. Id. Once the movant satisfies this initial burden, the burden shifts to the nonmovant to produce specific facts, in the manner prescribed by Civ.R. 56(E), indicating that a genuine issue exists for trial. Id. Accord Vahila v.Hall (1997), 77 Ohio St.3d 421, 429-430; Mitseff v. Wheeler (1988),38 Ohio St.3d 112, 114-115.
In the present case, we first note that the trial court set forth the proper standard for evaluating a summary judgment motion. Royal Tool contends that Capital failed to meet its initial burden of presenting competent Civ.R. 56(C) evidence demonstrating that Royal Tool had no evidence to support its claim of damages. Alternatively, Royal Tool argues that if Capital did, in fact, meet its initial burden, Royal Tool met its reciprocal burden of presenting evidence of damages.
Reviewing the trial court's ruling, de novo, we find that Capital satisfied its initial burden demonstrating the absence of a genuine issue of fact as to damages. In its summary judgment motion, Capital cites to the deposition testimony of William Free where he is asked what damages befell Royal Tool as a result of the transfer. Free indicated that one of its competitors told a potential client that Royal tool was "going down." Free did not point to any concrete damages that were either directly or indirectly financial.
Royal Tool, in its memorandum in opposition, simply quotes Free's response to whether or not the transfer hurt Royal Tool. Free stated: "[I]f someone takes a half a million dollars out of your account, it hurts." This, we find, is not competent evidence which creates a genuine issue of fact for trial. Dresher, supra. Accordingly, we find that appellant's first and second assignments of error are not well-taken.
 CROSS-APPEAL
We will now address the three assignments of error set forth in Capital's cross-appeal. Assignments of Error I. and III. shall be considered jointly as they both concern the application of R.C. 1304.66.
Capital argues that the trial court wrongly rejected the application of R.C. 1304.66. R.C. 1304.66 provides, in relevant part:
 "(A) A communication of the sender of a payment order canceling or amending the order may be transmitted to the receiving bank orally, electronically, or in writing. If a security procedure is in effect between the sender and the receiving bank, the communication is not effective to cancel or amend the order unless the communication is verified pursuant to the security procedure or the bank agrees to the cancellation or amendment.
 "(B) Subject to division (A) of this section, a communication by the sender canceling or amending a payment order is effective to cancel or amend the order if notice of the communication is received at a time and in a manner affording the receiving bank a reasonable opportunity to act on the communication before the bank accepts the payment order.
 "(C)(1) After a payment order has been accepted, cancellation or amendment of the order is not effective unless the receiving bank agrees or a funds-transfer system rule allows cancellation or amendment without agreement of the bank.
 "(2) With respect to a payment order accepted by a receiving bank other than the beneficiary's bank, cancellation or amendment is not effective unless a conforming cancellation or amendment of the payment order issued by the receiving bank is also made.
 "(3) With respect to a payment order accepted by the beneficiary's bank, cancellation or amendment is not effective unless the order was issued in execution of an unauthorized payment order, or because of a mistake by a sender in the funds transfer that resulted in the issuance of a payment order that is a duplicate of a payment order previously issued by the sender, that orders payment to a beneficiary not entitled to receive payment from the originator, or that orders payment in an amount greater than the amount the beneficiary was entitled to receive from the originator. If the payment order is canceled or amended, the beneficiary's bank may recover from the beneficiary any amount paid to the beneficiary to the extent allowed by the law governing mistake and restitution.
"* * *
 "(E) A canceled payment order cannot be accepted. If an accepted payment order is canceled, the acceptance is nullified, and no person has any right or obligation based on the acceptance. Amendment of a payment order is deemed to be cancellation of the original order at the time of amendment and issue of a new payment order in the amended form at the same time.
 "(F) Unless otherwise provided in an agreement of the parties or in a funds-transfer system rule, if the receiving bank, after accepting a payment order, agrees to cancellation or amendment of the order by the sender or is bound by a funds-transfer system rule allowing cancellation or amendment without the bank's agreement, the sender, whether or not cancellation or amendment is effective, is liable to the bank for any loss and expenses, including reasonable attorney's fees, incurred by the bank as a result of the cancellation, amendment, or attempted cancellation or amendment."
Capital argues that because the payment order issued by Lisa Cowell on behalf of Sun Coatings was unauthorized, see R.C. 1304.66(C)(3), R.C. 1366.04(E) divests the bank of any liability.
Further, Capital claims to be entitled to expenses and attorney fees as provided in R.C. 1304.66(F).
The trial court, in its November 17, 2000 judgment entry, determined that R.C. 1304.66 did not apply. The court stated:
 "If we assume that the first transfer was authorized and that the bank had no right to reverse the transaction based solely upon representations of Cicak, the statute does not apply, for cancellation itself was not proper."
Apparently, the trial court's election to dismiss Capital's arguments relative to R.C. 1304.66 was based upon the belief that its determination that Royal Tool could not prove damages made such arguments moot. We disagree. While we find that the protection from liability set forth in R.C. 1304.66(E) is moot based upon the trial court's determination that Royal Tool was unable to prove damages, we do find that the determination of whether the initial transfer was authorized or unauthorized does bear upon Capital's claim against Sun Coatings for expenses and attorney fees under R.C. 1304.66(F).
According to R.C. 1304.66(C)(3), once a payment order is accepted by the beneficiary's bank, as is the case here, cancellation is not effective unless the payment order was unauthorized. If the payment order was unauthorized, under R.C. 1304.66(F), the sender may be liable to the bank for expenses and attorney fees it incurred as a result of the cancellation.
The trial court did not conclusively determine whether the initial transfer was authorized or unauthorized and, thus, whether R.C.1304.66(C)(3) and R.C. 1304.66(F) are applicable. Therefore, because R.C. 1304.66(F) may apply and permit Capital to recover expenses and attorney fees from Sun Coatings, the trial court erred by dismissing Capital's third-party complaint. Based on the foregoing, we find that Capital's first assignment of error is moot. Capital's third assignment of error is well-taken. We further find that Capital's second assignment of error is moot based upon our disposition of Royal Tool's appeal.
On consideration whereof, we find that the judgment of the Lucas County Court of Common Pleas is affirmed, in part, and reversed, in part. The judgment is reversed as to the dismissal of cross-appellant's third party complaint and remanded for proceedings consistent with this decision. Costs of this appeal are assessed to appellant/cross-appellee Royal Tool, Inc.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Peter M. Handwork, J., James R. Sherck, J., and Mark L. Pietrykowski,P.J., CONCUR.
[1] While Sun Coatings and William Free were named as "Cross-appellees" in Capital's cross-appeal, they have not filed any briefs relative thereto.
[2] Cicak had some control over the operations of Sun Coatings though not as a listed owner, shareholder, or director.
[3] Brian Rex was also controller and treasurer of Sun Coatings.
[4] Former R.C. 1304.29(F), now codified in R.C. 1304.35(F), provided: "An action against a bank arising out of an unauthorized signature or indorsement of the item must be brought within one year after the customer has notified the bank of his claim as required by the provisions of this section."
[5] Former R.C. 1304.29(A) provides:
 "When a bank sends to its customer a statement of account accompanied by items paid in good faith in support of the debit entries or holds the statement and items pursuant to the request or instructions of its customer or otherwise in a reasonable manner makes the statement and items available to the customer, the customer must exercise reasonable care and promptness to examine the statement and items to discover his unauthorized signature or any alteration on an item and must notify the bank promptly after discovery thereof."
[6] R.C. 2307.32(F)(1) provides, in relevant part:
 "When a release or a covenant not to sue or not to enforce judgment is given in good faith to one of two or more persons liable in tort for the same injury or loss to a person or property * * *:
 "(1) The release or covenant * * * reduces the claim against the other tortfeasors to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, whichever is the greater."