OPINION
{¶ 1} Although originally placed on our accelerated calendar, we have elected, pursuant to Local Rule 12(5), to issue a full opinion in lieu of a judgment entry.
 {¶ 2} Plaintiff-Appellant, Med Flight, Inc. ("Med Flight"), appeals a judgment of the Crawford County Municipal Court, granting Defendant-Appellee's, Doris Whites, motion for summary judgment. The trial court found that because Med Flight had already received payment for its services from Medicare, its attempts to collect an additional $1,600.00 from Doris constituted balance billing under R.C. 4769.02. Med Flight claims that the additional $1,600.00 was for services that were not covered by Medicare and does not constitute balance billing. Having reviewed the entire record before us and the applicable law, we find that Med Flight's actions do not constitute balance billing. Accordingly, the judgment of the trial court is reversed and the cause is remanded for further proceedings consistent with this opinion.
 {¶ 3} In December of 2001, Doris' husband, Roland Whites, was a patient at Galion Community Hospital ("Galion Community") as the result of a heart attack. Roland's treating physician at Galion Community ordered Roland to be immediately transported to Riverside Methodist Hospital ("Riverside Methodist"), which is located in Columbus, Ohio, fifty miles away from Galion Community. The reason for Roland's transfer was that Galion Community could not provide the necessary medical services that he needed; however, Mansfield General Hospital ("Mansfield General"), in Mansfield Ohio, was only ten miles away from Galion Community and could have provided the necessary medical treatment. The record reflects that Roland's doctor transferred him to Riverside Methodist rather than Mansfield General based on the doctor's relationship with the cardiology specialist at Riverside Methodist.
 {¶ 4} Following the doctor's orders, Med Flight transported Roland to Riverside Methodist. The next day, Roland died as a result of the heart attack. Both sides agree that Roland's death was not caused by any act or omission on the part of Med Flight.
 {¶ 5} The total bill for Med Flight's ambulance services came to $6,000.00. The invoice divided the fee into three parts. The first part was a $4,000.00 basic fee for helicopter transportation. Part two was a charge for $400.00 for 10 miles at $40.00 per mile, representing the cost of transportation from Galion Community to the closest qualified medical facility, Mansfield General. The third and final part was a charge for $1,600.00 for 40 miles at $40.00 per mile, representing the additional distance from Galion Community to the medical facility that Roland's doctor's actually requested he be transferred to, Riverside Methodist.
 {¶ 6} Med Flight submitted the entire $6,000.00 bill to Medicare and Roland's supplemental health insurer. Both insurance carriers refused to pay the $1,600.00 additional cost of transportation to Riverside Methodist because Medicare regulations only cover the cost of transportation to the nearest facility capable of furnishing the required level of care. 42 C.F.R. 410.40(e)(1). Therefore, Medicare approved only the flat $4,000.00 helicopter fee and the $400.00 cost of transportation to Mansfield General, which was the nearest facility capable of providing the required medical treatment. This left Med Flight with an unpaid portion of its bill totaling $1,600.00.
 {¶ 7} After being denied payment by both Medicare and Roland's supplemental health insurer, Med Flight brought suit against Doris, seeking judgment against her for the balance of $1,600.00 still due on Roland's bill. A stipulation of facts was agreed to by the parties, and both sides filed motions for summary judgment.
 {¶ 8} In her summary judgment motion, Doris claimed that Med Flight's attempt to collect more than the Medicare approved amount was balance billing. Med Flight's summary judgment motion argued that its actions were not balance billing because balance billing only refers to seeking additional compensation for covered Medicare services. Additionally, Med Flight contended that Doris was liable for her husband's debts based upon unjust enrichment and the statutory and common law duties of a spouse.
 {¶ 9} The trial court found in favor of Doris, ruling that Med Flight's attempt to collect more than the Medicare approved amount was balance billing. Accordingly, the case was dismissed. From this judgment Med Flight appeals, presenting two assignments of error for our review.
 Assignment of Error I The trial court erred to the prejudice of Plaintiff-AppellantMed Flight, Inc. by overruling its motion for summary judgment.(Docket # 11 and 12).
 Assignment of Error II The trial court erred to the prejudice of Plaintiff-AppellantMed Flight, Inc. by sustaining Defendant-Appellee Doris Whites'motion for summary judgment. (Docket # 11 and 12).
 {¶ 10} Due to the nature of the assignments of error, we will address them out of order.
 Assignment of Error II {¶ 11} In its second assignment of error, Med Flight maintains the trial court erred in granting Doris' motion for summary judgment. Med Flight contends that its attempt to collect fees from Doris for services not covered by Medicare is not balance billing.
 {¶ 12} An appellate court reviews a summary judgment order de novo. Hillyer v. State Farm Mut. Auto. Ins. Co. (1999),131 Ohio App.3d 172, 175. Summary judgment is appropriate when, looking at the evidence as a whole: (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) construing the evidence most strongly in favor of the nonmoving party, it appears that reasonable minds could only conclude in favor of the moving party. Civ.R. 56(C); Horton v. Harwick Chemical Corp.
(1995), 73 Ohio St.3d 679, 686-687. If any doubts exist, the issue must be resolved in favor of the nonmoving party. Murphyv. Reynoldsburg (1992), 65 Ohio St.3d 356, 358-59. Herein, there are no material facts in dispute among the parties; therefore, we must only consider whether the trial court properly applied the law.
 {¶ 13} R.C. 4769.02 prohibits any health care practitioner, or any person who employs a health care practitioner, from balance billing a Medicare beneficiary for supplies or services. "Balance billing" is defined as "charging or collecting from a Medicare beneficiary an amount in excess of the Medicare reimbursement rate for Medicare-covered services or supplies provided to a Medicare beneficiary * * *." R.C. 4769.01(B). (Emphasis added.)
 {¶ 14} Doris contends, and the trial court found, that Med Flight's attempts to collect the $1,600.00 that Medicare refused to pay constitutes balance billing under the Ohio Revised Code. We do not agree with this interpretation of the statute.
 {¶ 15} The express terms of the statute define balance billing as involving an attempt to collect a fee that is connected to a "Medicare-covered" service or supply. Here, the $1,600.00 is a charge resulting from services that Medicare did not cover at all. According to the regulations, Medicare only provides coverage for ambulance services to the nearest hospital that is capable of providing the beneficiary with the required level of care. 42 C.F.R. 410.40(e)(1).
 {¶ 16} The nearest hospital that was capable of providing Roland with his required level of care was Mansfield General, which was a 10 mile trip from Galion Community. However, Med Flight transferred Roland a distance of 50 miles to Riverside Methodist on the order of Roland's doctor, 40 miles further than the distance to Mansfield General. Based on its regulations, Medicare refused to cover the additional 40 miles from Mansfield General to Riverside Methodist and did not pay any of the resulting bill related to the extra expense. The extra 40 miles were not "Medicare-covered" services for which Med Flight is attempting to charge more than Medicare's reimbursement fee. Under the statute, it would have been balance billing had Medicare agreed to cover the extra 40 miles, but had only allowed a reimbursement rate of $100.00 for the trip, and then Med Flight had attempted to collect the additional $1,500.00 from Doris. Because Medicare provided no coverage at all for the services Med Flight is attempting to collect on, this cannot be balance billing as defined in R.C. 4769.01.
 {¶ 17} Doris also argues that the Medicare statutes and regulations themselves prohibit balance billing. Part B of the Medicare act covers supplemental medical insurance benefits, including ambulance services. Sections 1395j-1395w-4, Title 42, U.S. Code; see, also, 42 C.F.R. 410.40. A participating health care provider accepting assignments through Medicare receives reimbursement from the federal government for 80 percent of the covered costs, and the patient is liable for the remaining 20 percent. Section 1395cc(a)(2), Title 42, U.S. Code.
 {¶ 18} Section 1395cc(a)(1)(A)(i), Title 42, U.S. Code provides that a participating provider shall not "charge, except as provided in paragraph (2), any individual or any other person for items or services for which such individual is entitled to have payment made under this subchapter." This typically means that a participating provider may only collect 20 percent of its covered costs from the patient and must accept Medicare's reimbursement schedule. However, as discussed above, Roland was not entitled to have any payment made under this subchapter for the additional 40 miles. None of this additional mileage was considered covered services for which there was even a Medicare reimbursement schedule. It was an additional fee that fell outside of the scope of Medicare's coverage.
 {¶ 19} Furthermore, Section 1395cc(a)(2)(B), Title 42, U.S. Code, provides that:
Where a provider of services has furnished, at the request ofsuch individual, items or services which are in excess of or moreexpensive than the items or services with respect to whichpayment may be made under this subchapter, such provider ofservices may also charge such individual or other person for suchmore expensive items or services to the extent that the amountcustomarily charged by it for the items or services furnished atsuch request exceeds the amount customarily charged by it for theitems or services with respect to which payment may be made underthis subchapter.
This paragraph clearly contemplates the exact situation Med Flight is faced with herein. Roland, through his doctor, requested a service in excess of the service for which coverage is provided for under Medicare. Under the above paragraph, Med Flight is expressly permitted to seek full compensation from Roland for requested services it rendered that exceeded Medicare covered services.
 {¶ 20} Based on the above, we find that Med Flight's attempts to collect the $1,600.00 were not balance billing as defined by the Ohio Revised Code. We also find that Med Flight's actions were not barred by any Medicare statute or regulation. Therefore, Med Flight's second assignment of error is sustained and the judgment of the trial court granting Doris' summary judgment is reversed.
 Assignment of Error I {¶ 21} In its first assignment of error, Med Flight contends that the trial court erred in not granting its motion for summary judgment. However, the trial court did not address the substantive issues contained in Med Flight's summary judgment motion, but ruled only on the issue of balance billing. We decline to address the substantive arguments raised in Med Flight's summary judgment motion that were not addressed at the trial level, but note that such issues should be dealt with on remand Accordingly, Med Flight's first assignment of error is overruled.
 {¶ 22} Having found error prejudicial to the appellant herein, in the particulars assigned and argued, we reverse the judgment of the trial court and remand the matter for further proceedings consistent with this opinion.
Judgment reversed and cause remanded.
 Shaw, P.J., and Bryant, J., concur.