FARREN et al. Appellants,

v.

**BALTIMORE RAVENS, INC., et al. Appellees.**

[Cite as *Farren v. Baltimore Ravens, Inc.* (1998), 130 Ohio App.3d 533.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 74633.

Decided Nov. 23, 1998.

**534**

*Cornrich, Katz & Cornrich* and *Robert S. Gurwin,* for appellants.

*Irwin Dinn,* for appellee Baltimore Ravens, Inc.

*Betty D. Montgomery,* Attorney General and *Laurel Blum,* Assistant Attorney General, for appellee Administrator of Workers' Compensation.

*Robert P. Lucarelli,* for appellee Cleveland Browns, Inc.

---

*Per Curiam.*

Appellant appeals the trial court's decision granting summary judgment in appellee's favor. Since the record indicates that the trial court erred in its conclusion, we reverse.

On August 23, 1994, appellant Paul V. Farren filed an application with the Ohio Bureau of Workers' Compensation seeking compensation for injuries he incurred on May 6, 1992. The application was denied following a formal hearing before the district hearing officer of the Industrial Commission. Appellant appealed that decision. Appellant's claim was eventually allowed by a staff hearing officer, who determined that appellant's injuries arose during the course of and arising from his employment with appellee.

Appellee subsequently filed an appeal with the Industrial Commission; that appeal was denied. Appellee thereafter filed an appeal with the Cuyahoga County Court of Common Pleas.

Appellee filed a motion for summary judgment in the lower court on the grounds that appellant was not an employee at the time he sustained his injury. The lower court granted appellee's motion.

The relevant facts are as follows. Appellant was selected by appellee Baltimore Ravens, Inc., f.k.a. Cleveland Browns, Inc., in the 1983 National Football League ("NFL") draft. Appellant was injured on May 6, 1992, while performing weightlifting exercises during off-season conditioning at appellee's training facility.

Appellant had previously signed contracts for each season that he played with the team. Relevant to the instant appeal, on August 28, 1990, appellant signed a contract that provides, at paragraph one:

"TERM. This contract covers one football season, and will begin on the date of execution or February 1, 1991, whichever is later, and end on February 1, 1992, unless extended, terminated, or renewed as specified elsewhere in this contract."

The contract provided for an annual salary of $425,000.

On April 2, 1992, appellee offered appellant a contract for the 1992 NFL season at one hundred percent of his 1991 salary if appellant signed the contract within fifteen days after April 15, 1992. Appellant did not sign within fifteen days of April 15; he testified that "no players do" because "they want to negotiate and try to get better contracts."

Appellant eventually signed his contract for the 1992 season on August 9, 1992. The term of this contract also covered one football season, beginning "on the date of execution or February 1, 1992, whichever is later," and terminating on February 1, 1993. Appellant's salary was $340,000.[1]

Appellee contends that since appellant was not covered by a contract at the time of his injury, he was not an employee. In support, appellee submits the affidavit of James N. Bailey, executive vice president and general counsel for appellee. Bailey stated that appellant became a free agent upon the expiration of his contract on February 1, 1992. He also stated that the team conducted formal elective off-season conditioning in accordance with a "signed standard NFL player contract, or a special agreement of hire, referred to as a Participation Agreement."[2] It is undisputed that appellant did not sign his NFL contract until August 9, 1992. Moreover, there is no evidence to indicate that appellant either was presented with or signed a participation agreement.

Additionally, according to Bailey, only those players who had signed either an NFL contract or a participation agreement were paid for participating in off-season conditioning. Otherwise, an individual working out at the facility "in anticipation of being signed to a player contract, or for any other reason, * * * did so at his own risk and peril."

The record indicates that appellant was invited to attend a football minicamp in June 1992, for which he received $214.20 for his attendance. Appellant was not otherwise paid for his participation in off-season conditioning. Other than the money he received for the minicamp, appellant received remuneration only for

---

1. Appellant's salary for the 1992–1993 season was subject to adjustments as provided in paragraph 24 of the contract.

2. The participation agreement "sets forth [the team's] understanding regarding [the player's] participation in Club's off-season physical conditioning program during the 1992 off-season." The agreement also provides that the player "will be regarded as an employee of the Club" but allows that the player may still "be entitled to continue to pursue any and all rights [he] may have as a veteran free agent."

three weeks of preseason pay for the period of August 9 through August 30, 1992, and contract pay for the period from September 1 through December 31, 1992, per his contract of hire.

In spite of the terms of the contract, appellant testified at his deposition that he believed that he was under contract with appellee year-round. Appellant claimed that it was made clear to him that his position was "a year-round job, and you're paid for year-round work, and no longer can you go home and work out on your own, they want you to work out in the facilities." Appellant believed that off-season workouts were mandatory because he was not a starting player and he could not "dictate his every whim." Appellant also testified that he did not believe that he was a free agent and that he was not sure what becoming a free agent entailed.

Appellant's sole assignment or error contends that the trial court erred in granting summary judgment to appellee.

Civ.R. 56 provides that summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, that party being entitled to have the evidence construed most strongly in his favor. *Zivich v. Mentor Soccer Club Inc.* (1998), 82 Ohio St.3d 367, 369–370, 696 N.E.2d 201, 203–204, citing *Horton v. Harwick Chem. Corp.* (1995), 73 Ohio St.3d 679, 653 N.E.2d 1196, paragraph three of the syllabus. The party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Zivich, supra,* citing *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 292–293, 662 N.E.2d 264, 273–274.

A reviewing court assesses the lower court's ruling on a motion for summary judgment *de novo.* See, *e.g., Adelman v. Timman* (1997), 117 Ohio App.3d 544, 690 N.E.2d 1332. Thus, this court must now determine whether reasonable minds could differ as to whether appellant was an employee at the time he allegedly sustained his injury. It is appellant's position that his seven-year career with the team and participation in off-season training at appellee's exclusive facility create an issue of material fact that could allow a reasonable person to conclude that appellant was an employee of appellee at the time he sustained his injury.

For purposes of the Workers' Compensation Act, the term "employee" is defined by two different sections. R.C. 4121.01(A)(4) defines "employee" as "every person who may be required or directed by any employer, in consideration of direct or indirect gain or profit, to engage in any employment, or to go, or work, or be at any time in any place of employment."

R.C. 4123.01(A)(1)(b) defines an "employee" as "[e]very person in the service of any person, firm, or private corporation, including any public service corporation, that (i) employs one or more persons regularly in the same business or in or about the same establishment under any contract of hire, express or implied, oral or written."

It is well settled that the statutes must "be liberally construed in favor of employees." R.C. 4123.95.

The language in the contracts is clear. The contract for the 1991 season terminated on February 1, 1992. The contract for the 1992 season commenced on August 9, 1992, i.e. the latter of either February 1, 1992, or the signing date. Thus, when appellant was injured on May 6, 1992, he was not covered by any express, written contract with appellee.

However, appellant testified that he believed off-season conditioning was mandatory and that "[t]hey wanted everyone there." He also stated that he was told that his position was a year-round job. This court recognizes that the work required to maintain the physical condition necessary to perform as a professional athlete is a year-round proposition.

Moreover, appellee's actions indicated that appellee considered appellant to be a team member. Appellant had played for the team for seven consecutive seasons. Appellee paid appellant for his participation in a minicamp in June 1992; a time period between the expiration of the 1991 agreement yet before the signing of the 1992 agreement.

Additionally in the record is a letter written to appellant that informed him that as of February 2, 1992, he was an unconditional free agent. However, the letter continues:

"Beginning on that date *and continuing through April 1, 1992,* you have the right to negotiate and sign a contract with any other NFL club, with the Cleveland Browns maintaining no right of first refusal or compensation. *If you do not sign a contract with another NFL club during that period, the Cleveland Browns may choose to maintain its contract rights to you by tendering a one-year contract* (with no option) to you at no less than 100% of the salary which you received under your last contract." (Emphasis *added.*)

At the time appellant was injured, April 1, 1992, had passed, appellant had not signed with another team, and appellee had tendered a one-year contract to appellant.[3]

---

3. Admittedly, appellant had not yet signed the new contract on the date he sustained his injury.

There is sufficient evidence in the record to allow reasonable minds to conclude that appellant was directed by appellee to participate in off-season conditioning in expectation of appellant's playing on appellee's team during the 1992 season. Moreover, there is also evidence to support the conclusion that an implied contract may have existed. Appellant had not signed with another team as of April 1, 1992, he had received notification from appellee on April 2, 1992, that appellee wished to re-sign him, and he was invited to partake in, and was compensated for, his attendance at a minicamp in June 1992.

When construing the evidence most strongly in appellant's favor, reasonable minds may conclude that appellant was an employee at the time of his injury. This court's review of the record and relevant case law indicates the trial court erred when it granted summary judgment for appellee.

The judgment of the trial court is reversed.

*Judgment reversed.*

ROCCO, P.J., JAMES D. SWEENEY and MICHAEL J. CORRIGAN, JJ., concur.