DECISION AND JUDGMENT ENTRY
This case comes before the court on appeal from a decision and judgment entry of the Lucas County Court of Common Pleas which granted the motion of appellee, Ottawa Lanes, for summary judgment.
The following facts are relevant to this appeal. On May 10, 1996, appellant, Richard George, fell while trying to bowl on lane 30 at Ottawa Lanes. Appellant asserts that as he made his approach to throw his bowling ball, his foot stuck on a substance near the foul line which caused him to pitch forward onto the lane. Appellant points out that just prior to his fall he had bowled one practice ball on the lane without coming into contact with the substance on the floor. However, appellant says he approached the lane from a different angle for the second practice shot, which put him into contact with the substance.
Appellant states that following his fall, one of appellee's employees came over to the lane and cleaned the substance off the floor with a steel wool pad before appellant was able to identify it. Appellant asked the employee what the substance was, and the employee said it must have been oil.
Appellant filed this lawsuit on May 8, 2000, claiming he suffered serious, permanent injuries to his neck, back, and entire body as a result of his fall at the bowling alley, and asking for a monetary judgment exceeding $25,000. Appellee filed a motion for summary judgment June 8, 2000, which the trial court granted on July 18, 2000.
Appellant now asserts the following assignments of error:
"ASSIGNMENT OF ERROR 1:
 The Defendant, Ottawa Lanes, had constructive knowledge of the existence of the substance which caused the Plaintiff, Richard George, to fall and sustain injury and therefore, they breached their duty to the Plaintiff."
 "ASSIGNMENT OF ERROR 2:
 The statements made by the Defendant's employee, the affidavit of Sue Stein, and the fact that the Plaintiff was injured in this matter, provide sufficient evidence that the substance did in fact exist."
Since appellant's first assignment of error necessarily entails a discussion of the issues presented in his second assignment of error, we will discuss both assignments together.
This court engages in a de novo review of the lower court's grant of summary judgment. Brown v. Scioto Bd. of Commrs. (1993),87 Ohio App.3d 704, 711. Civ.R. 56(C) provides that summary judgment can be granted only if (1) no genuine issue of material fact remains to be litigated; (2) viewing the evidence in a light most favorable to the nonmoving party, reasonable minds can reach but one conclusion and that conclusion is adverse to the nonmoving party; and (3) the moving party is entitled to summary judgment as a matter of law. Horton v. HarwickChem. Corp. (1995), 73 Ohio St.3d 679, paragraph three of the syllabus. The party moving for summary judgment under Civ.R. 56 bears the burden of showing that there is no genuine issue of material fact on the essential elements of the nonmoving party's claim. Dresher v. Burt (1996),75 Ohio St.3d 280, 293. If the moving party satisfies this burden, the nonmoving party has a reciprocal burden, as outlined in Civ.R. 56(E), to set forth specific facts showing that there is a genuine issue for trial. Id. at 293.
In this case, appellant argues that appellee was not entitled to summary judgment because three genuine issues of material fact exist, namely whether or not: (1) appellee exercised ordinary care and maintained the business premises in a reasonably safe manner; (2) the condition existed long enough for appellee to have constructive knowledge of the danger; and (3) oil can make a person's foot stick instead of slide on a bowling alley approach.
Appellee argues that the trial court properly granted the motion for summary judgment because appellant failed to provide evidence that any substance was on the bowling alley approach prior to appellant's entering the approach, or that appellee created, knew of, or should have known any substance on the floor.
Appellant was a business invitee of appellee on May 10, 1996. Thus, appellee owed appellant a duty of ordinary care to maintain its premises in a reasonably safe condition so that appellant was not unnecessarily and unreasonably exposed to danger. Paschal v. Rite Aid Pharmacy, Inc. (1985), 18 Ohio St.3d 203; Keiser v. Giant Eagle, Inc. (1995),103 Ohio App.3d 173, 176. A business invitee must show in a slip and fall negligence case against a proprietor that the proprietor caused the hazard and that the proprietor or one of its employees either (1) had actual knowledge of the hazard and neglected to give adequate notice of its presence or to remove it promptly; or (2) the danger presented by the hazard had existed for a reasonably sufficient time to justify the inference that the failure to warn against it or remove it was attributable to a lack of ordinary care. Johnson v. Wagner ProvisionCo., (1943), 141 Ohio St. 584, 589; Orndorff v. Aldi, Inc. (1996),115 Ohio App.3d 632, 635-636. The standard for determining sufficient time to allow the exercise of ordinary care requires evidence of how long the hazard existed. Combs v. First Nat'l. Supermarkets, Inc. (1995),105 Ohio App.3d 27, 30, citing Anaple v. Std. Oil Co. (1955),162 Ohio St. 537, 541. Thus, evidence of how long the hazard existed is mandatory in establishing a duty to exercise reasonable care. Combs,supra.
In this case, appellant never maintains that he saw a substance on the approach to the lane either before or after his fall. However, fellow bowler, Sue Stein, states in her affidavit that the "substance was on the lane prior to Richard falling." Viewing the evidence in the light most favorable to appellant, we must conclude that there was some substance on the approach to lane 30. Nonetheless, appellant does not provide specific facts to create a question of material fact as to whether appellee had constructive knowledge of the substance.
In support of appellant's position that any danger presented by the substance existed for a reasonably sufficient time to justify an inference that appellees' failure to warn against it or remove it amounted to a lack of ordinary care, appellant offers the deposition of James Nopper, the owner of Ottawa Lanes, and appellee's responses to interrogatories. Nopper stated in his deposition that on the day in question, the lanes were "dressed", or prepared, between 4:00 and 5:00 p.m. for league bowling which began between 6:30 and 7:00 p.m. In an effort to establish that appellee had adequate time to discover a substance on the lane and do something about it, appellant's attorney, Stephen Crossmock, engaged in the following exchange with Nopper:
 "CROSSMOCK: Would there have been any open bowling on the lanes after —
"NOPPER: Probably not.
 "CROSSMOCK: * * * Between the time the lanes were dressed and the time the leagues started?
"NOPPER: Probably not, but I couldn't swear to that because I have no idea. I mean, that would be impossible to determine.
 "CROSSMOCK: And when you say it would be impossible to determine, are their records that you keep or kept that would show the number of bowlers during open bowling that day?
"* * *
 "NOPPER: They do not take a reading on the particular lanes, so I don't think there would be a record * * *.
Attorney Crossmock continued this line of questioning later in the deposition, in the following manner:
 "CROSSMOCK: Okay. And there was probably not any open bowling between after the lanes was dressed and the start of the league, is that correct?
 "NOPPER: Well, I wouldn't — I could say that the odds were that there weren't, but I couldn't swear to it because I wasn't there.
"* * *
 "CROSSMOCK: Okay. I want you to assume that there had been open bowlers. When would the open bowlers had to be off that lane in order for the league to start?
 "NOPPER: Probably if they did the lanes, if they were doing the lanes at four o'clock they would have cleared open bowling on that end definitely. In other words, when they start the lanes they start putting people behind the machine so that guy can keep on going."
Appellant terms this second exchange as an "admission" on Nopper's part that the bowling alley had three and one-half to four hours prior to league bowling during which nobody bowled on lane 30.[1] However, Nopper did not definitively say there was no bowling on lane 30 after the dressing, just that it would have been cleared for the dressing. In fact, Nopper's second exchange with attorney Crossmock continued with the following testimony:
 "CROSSMOCK: And you would start doing the lanes on lane one?
"NOPPER: Right.
 "CROSSMOCK: And if the plaintiff's testimony is he was on lane 30 all the open bowling would have been behind him?
"NOPPER: Probably.
"CROSSMOCK: Okay.
 "NOPPER: Unless somebody came in, you know, and they gave it out at five o'clock or 5:30 or somebody wanted to bowl a practice game. I don't know.
 "CROSSMOCK: Okay. And again, on the assumption that someone did use lane 30 what time would that person have had to be off the lane prior to the start of the summer league?
 "NOPPER: Probably 15 minutes prior, at least half hour."
Based on this testimony, anyone could have bowled on lane 30 up to fifteen to thirty minutes before appellant did. Sue Stein's statement in her affidavit that there was no open bowling on the league lanes when appellant and she arrived does not dispute this fact. In fact, the only definitive statement made by Nopper regarding activity on the lanes was that there could not be any open bowling after the lint-a-duster was run, a separate procedure from dressing the lanes, which is "done shortly before the league" bowling begins.
We note that appellant argues in his reply brief that under the doctrine of res ipsa loquitur, negligence should be inferred on the part of appellee because the lane approaches were under appellee's exclusive management and control, and the accident would not have happened if appellee had used ordinary care. However, Sweeney v. Erving, which appellee cites to in its brief explains, "The rule of res ipsa loquitur
does not relieve the plaintiff of the burden of showing negligence, nor does it raise any presumption in his favor." Sweeney v. Erving (1913),228 U.S. 233, 241, citing Stewart v. Van Deventer (1905), 138 N.C. 60,66. In this case, the situation surrounding appellant's fall is not such that it "speaks for itself", and no evidence was presented upon which to justify the inference that the failure to warn against any substance or remove it was attributable to a lack of ordinary care.
After thoroughly examining the record and construing all of the evidence in the light most favorable to appellant, we find that although there is some direct evidence of a substance on lane 30 prior to appellant's fall, it cannot be said that so much time elapsed from the time the lint-a-duster was run and the time appellant fell that appellee should be imputed with constructive knowledge of the substance on the lane. Consequently, appellant's first and second assignments of error are not well-taken.
On consideration whereof, the court finds that substantial justice has been done the party complaining, and the judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal.
 _____________________ Melvin L. Resnick, J.
Richard W. Knepper, J. and Mark L. Pietrykowski, P.J. CONCUR.
[1] Appellant apparently bases this time frame on appellee's answer to interrogatory number six which indicated lanes were dressed "around 3:00 p.m. each day."