OPINION
On March 13, 2000, John C. Prater filed a complaint in the Franklin County Court of Common Pleas against Three-C Body Shop, Inc. ("Three-C"). Mr. Prater's automobile had been involved in a collision, and he had brought the automobile to Three-C for repairs. Mr. Prater averred that Three-C had failed to properly perform the repairs. In essence, Mr. Prater's claims sounded in breach of contract and fraud.
The parties filed motions for summary judgment. On June 14, 2001, the trial court rendered a decision granting partial summary judgment in favor of Three-C. The trial court found that Three-C was entitled to summary judgment on the issue of whether or not Three-C was in breach of contract for failure to make the repairs in a timely manner. However, the trial court concluded that genuine issues of fact remained as to whether Three-C was in breach of contract for the repair work performed. Summary judgment in favor of Three-C was also granted on the claims for fraud, tortious "threat of arrest," overpayment and punitive damages.
The only remaining claim — breach of contract in regard to the repairs performed — was tried before a jury. On July 26, 2001, a final judgment entry was journalized indicating that the jury had returned a verdict in favor of Three-C.
Mr. Prater (hereinafter "appellant") has appealed to this court, assigning the following errors for our consideration:
 1. The trial court entered Summary Judgment in favor of Defendant despite factual disputes as to whether the contract between Plaintiff and Defendant had been fully performed.
 2. The trial court committed error by adopting [the] opinion in Three-C's affidavit relating to industry standard and accepting that opinion as fact in the case in the process of narrowing Appellant's right to proceed to trial and in ruling on Summary Judgment.
 3. The trial court committed error in denying Appellant the right to proceed to trial on the issue of breach of contract as established in the complaint, answer, and subsequent pleadings in the case.
Appellant's assignments of error, in essence, take issue with the trial court's granting of summary judgment in favor of Three-C (hereinafter "appellee") on certain claims. Accordingly, appellant's assignments of error will be addressed together.
Summary judgment is appropriate when, construing the evidence most strongly in favor of the nonmoving party, (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, that conclusion being adverse to the nonmoving party. Zivich v. Mentor Soccer Club, Inc. (1998), 82 Ohio St.3d 367, 369-370, citing Horton v. Harwick Chem. Corp. (1995), 73 Ohio St.3d 679, paragraph three of the syllabus. Our review of the appropriateness of summary judgment is de novo. See Andersen v. Highland House Co. (2001), 93 Ohio St.3d 547,548.
Appellant first contends that the trial court improperly took away appellant's right to have a trial on the issue of whether the contract was performed in full. Specifically, appellant asserts the trial court erroneously limited the trial to the issue of whether or not the repairs were performed in a "workmanlike" manner. Appellant contends he also had claimed that work contracted for had not been performed and that the automobile was returned in a faulty and unsafe condition. In essence, appellant argues that the essential purpose of the contract — to repair the automobile — was not performed and that this issue should have been submitted for trial.
The record before us indicates that the issue of whether the contract was breached for failure to properly perform the repairs was not dismissed by way of summary judgment and was, presumably, tried to the jury. Other than granting summary judgment on the issue of the timeliness of the repairs, the trial court did not otherwise limit any remaining issues regarding breach of contract. No transcript of the trial was included in the record and, thus, we cannot ascertain whether or not any issue was erroneously excluded for consideration by the jury. Again, the record before us indicates that the trial court did not limit the issues relating to appellee's performance under the contract (other than the timeliness issue). Hence, appellant's contentions in this regard are not well-taken.
Appellant next contends that summary judgment was inappropriate as to the issue of whether appellee breached the contract for failing to make the repairs in a timely fashion. Specifically, appellant asserts the trial court erroneously relied on an affidavit submitted by one of appellee's employees regarding the industry standard as to timeliness. Again, we review the appropriateness of summary judgment on this issue independently. Accordingly, we will look to all the evidence on the issue of timeliness in order to ascertain whether or not a genuine issue of fact existed sufficient to withstand summary judgment.
The evidence shows appellant was told that the repairs would take seven to ten days. (Prater affidavit; Prater deposition at 41-42.) However, appellant also signed a document entitled "THREE-C BODY SHOP, INC. AUTHORIZATION FOR REPAIRS" which stated in paragraph two:
 Due to unforeseen circumstances beyond the control of Three-C, estimated completion and delivery dates are to be considered an approximate date of completion of the repairs authorized hereunder. Delivery dates are not guaranteed and Three-C is not responsible for vehicle rental costs incurred by you after the estimated completion date.
The automobile was delivered to appellee on August 16, 1999. Appellant did not get his automobile back until October 26, 1999, seventy-one days later. The evidence shows that there were several reasons for the delay including the fact that the manufacturer had problems meeting demands for factory parts on older model automobiles due to a prior strike. Appellee completed its repairs on September 30, 1999. However, appellant expressed dissatisfaction with various repairs, and the automobile was kept in order to fix these problems. (LaFuze affidavit; Prater deposition at 59-63; Prater affidavit.) On October 26, 1999, appellant went to the shop to retrieve his automobile. (Prater deposition at 79-82.)
This evidence, construed most strongly in favor of appellant, does raise a genuine issue of fact as to whether appellee made untimely repairs in breach of the contract. The trial court concluded, however, that appellee completed the repairs within a reasonable amount of time and based its decision on the affidavit of appellee's employee, Ben J. LaFuze. Mr. LaFuze, appellee's production manager during the pertinent time, stated that the industry average among body shops for repairs was one week of repair for every $1,000 in repair costs. The trial court concluded that because the original repair estimates totaled over $10,000, the repairs were performed timely as the industry standard would give appellee approximately seventy-one days to complete the repairs.
We find that the trial court erred in concluding appellee performed the repairs in a reasonable amount of time and in basing such conclusion on the industry standard as set forth by appellee's employee. At the summary judgment stage, Mr. LaFuze's opinion should not have been accepted as true and certainly should not have been the standard under which reasonableness was based. The same party that set forth this "industry standard" told appellant that his repairs would take seven to ten days. The repair cost stemming from the collision was estimated at $8,531.91. Under appellee's "industry standard," it would have been reasonable to give a repair time of approximately sixty days ($8,531.91 in repair costs equals 8.5 weeks or 59.72 days of repair time) for the collision-related repairs. Yet, appellee told appellant it would only take seven to ten days.
We understand that the authorization form did state that estimated completion dates were to be considered approximate dates and that delivery dates were not guaranteed. However, at the summary judgment stage, the evidence must be construed in favor of the nonmoving party. In accepting appellee's "industry standard" as the basis upon which to judge reasonableness, the trial court did not construe the evidence most strongly in favor of appellant but, rather, accepted appellee's evidence as determinative of the issue. To this extent, the trial court erred. However, such error was harmless.
Even if we conclude that appellee was in breach of contract for failure to make the repairs in a timely manner, summary judgment on this issue was still appropriate, as appellant failed to set forth any evidence of damages based on this specific breach. See Prater deposition at 119-120. Accordingly, summary judgment in favor of appellee on the breach of contract/timeliness issue was appropriate. See DeCastro v. Wellston City School Dist. Bd. of Edn. (2002), 94 Ohio St.3d 197,200-202.
In his complaint, appellant also averred that he had paid an amount in excess of the agreed upon price. Specifically, appellant asserted that appellee had demanded $8,531.91 plus an additional $495 in cash in order to get his automobile on October 26, 1999. The evidence shows that $8,531.91 was the estimate for repairs stemming from the automobile collision. However, the evidence also shows that appellant requested additional repairs beyond the collision-related repairs and for which he (and not the insurance company) would be responsible.
For example, Mr. LaFuze stated in his affidavit that the estimate for the additional repairs was $1,714.16. However, because appellant had certain complaints regarding such repairs, appellee had agreed to charge only $800 for these additional repairs. Appellant stated that in addition to the $8,531.91 collision-related repairs, he had to pay approximately $400 for extra work. (Prater deposition at 70, 115.) Appellant agreed that the insurance company paid the $8,531.91 in collision repairs, that he was supposed to pay for the extra work, and that he did pay approximately $400 for the extra work. Id. at 70, 115-118.
The evidence as set forth above, construed most strongly in favor of appellant, shows that appellant did not make an overpayment for the work performed by appellee. Indeed, the evidence shows that appellant paid less than the price originally agreed upon for the additional work. For this reason, summary judgment in favor of appellee on the claim for overpayment was appropriate.
Appellant also asserts that the trial court erred in granting summary judgment in favor of appellee on the fraud claim. Appellant averred in his complaint that appellee had wrongfully, falsely, knowingly and intentionally misrepresented its work. In addition, appellant averred that appellee had demanded an amount in excess of that which was agreed upon.
First, we have already determined that appellant raised no genuine issue of fact as to the issue of overpayment. Thus, any fraud claim based upon an alleged overpayment was properly disposed of by way of summary judgment. In addition, appellant has set forth no evidence that appellee's alleged wrongful actions involved anything beyond a breach of contract, i.e., an alleged failure to properly perform the repairs.
A breach of contract claim does not create a tort claim, and a tort claim based upon the same actions as those upon which a breach of contract claim is based exists only if the breaching party also breaches a duty owed separately from that duty created by the contract, that is, a duty owed even if no contract existed. Textron Fin.Corp. v. Nationwide Mut. Ins. Co. (1996), 115 Ohio App.3d 137, 151, discretionary appeal not allowed in (1996), 78 Ohio St.3d 1425. Further, there must be damages attributable to the wrongful acts which are in addition to those attributable to the breach of contract. Id.
Appellant has shown no evidence of actions sounding in fraud and which were separate from the actions allegedly constituting breach of contract. Nor has appellant shown that any duty was owed him beyond that which was owed under the contract. Hence, summary judgment in favor of appellee on the fraud claim was appropriate.
Appellant also averred in his complaint that appellee had committed a tort against him. Specifically, appellant asserted that when he attempted to discuss the repair problems with appellee's president, Robert A. Juniper, Jr., and to retrieve his car from the shop, he was threatened with "arrest and incarceration." (See complaint.) In his affidavit, appellant stated that Mr. Juniper threatened to have him arrested because of the questions regarding his automobile. Appellant stated that he had asked to speak to Mr. Juniper and that the receptionist told him he could not. (Prater deposition at 67.) So, appellant went back into Mr. Juniper's office. Id. Mr. Juniper got up, cursed, ranted, asked appellant to leave his office, and said he was going to call the police. Id. at 67-69. Mr. Juniper told the receptionist to call the police. (Juniper affidavit.)
Even construing the evidence most strongly in favor of appellant, appellant has not shown that he is entitled to judgment as a matter of law under these facts. Appellant has simply failed to point to any tort theory under which he may recover. Accordingly, summary judgment in favor of appellee on this "tort" claim was appropriate.
Lastly, we find that summary judgment on appellant's claim for punitive damages was appropriate. There are no remaining claims under which punitive damages are available. See DeCastro, supra at 201 (punitive damages are not recoverable for a breach of contract unless the conduct constituting breach is also a tort for which punitive damages are recoverable).
In conclusion, summary judgment in favor of appellee on the claims for breach of contract (timeliness issue), overpayment, fraud, tort and punitive damages was appropriate. Accordingly, all of appellant's assignments of error are overruled.
Having overruled all of appellant's assignments of error, the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
McCORMAC and PETREE, JJ., concur.
McCORMAC, J., retired, of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.