DECISION
On January 8, 1999, Wendy Joyce Logan, in her role as administrator of the estate of James Adams Wright, IV, filed a lawsuit against Tammy Meeks. The lawsuit sought to recover damages as the result of the drowning of James Wright while he was in daycare under the supervision of Tammy Meeks.
On July 19, 1999, Wendy Joyce Logan filed a second lawsuit, this time seeking damages from Property One, Inc. ("Property One") and Heathergreen Apartments Associates Ltd. ("Heathergreen Apartments"). The second lawsuit alleged liability of the latter two entities based upon their ownership and/or management of the swimming pool where James Wright drowned. The two lawsuits were consolidated.
On June 8, 2001, Property One filed a motion for summary judgment, alleging that they were not in any way responsible for the death. Counsel for Ms. Logan filed a memorandum in response. Property One filed a reply memorandum. The parties also provided the trial court with a series of affidavits and four depositions for consideration in ruling on the motion.
On November 8, 2001, the trial court granted Property One's motion for summary judgment. The December 11, 2001 judgment entry expressly determined, pursuant to Civ.R. 54(B), that there was no just reason for delay. Ms. Logan (hereinafter "appellant") has appealed that ruling, assigning a single error for our consideration:
"THE TRIAL COURT ERRED IN GRANTING THE MOTION FOR SUMMARY JUDGMENT OF THE DEFENDANT, PROPERTY ONE, INC."
Counsel for appellant has briefed these issues for specific consideration in addressing the assignment of error. First, counsel attacked the trial court's reliance upon the affidavits of Frank Pia, who identified himself as president of Pia Consulting Services. Mr. Pia investigated some of the facts surrounding the death of James Wright and gave his opinion on several important issues. In his first affidavit, Mr. Pia provided no additional information which would qualify him as an expert. However, in conjunction with the filing of the reply memorandum, he provided a second affidavit which devoted four paragraphs to his credentials, dating back to 1959. These credentials qualify him as a person the trial court could consider an expert.
Counsel for appellant also attacks the content of Mr. Pia's affidavits. However, the trial court's decision shows a consideration of all the evidentiary material before it. The trial court did not rely on Mr. Pia's opinion to the exclusion of all other evidence. In short, the trial court could and did properly consider Mr. Pia's affidavits in addressing the merits of the motion for summary judgment.
The second issue argued on behalf of appellant is that the trial court considered only negligence per se theories in deciding the motion for summary judgment. However, the trial court also included a discussion of the duty of care owed to James Wright under ordinary negligence theories. The second issue also has no merit.
Appellant's third argument, in essence, is that there were genuine issues of fact as to whether Property One (hereinafter "appellee") violated a duty of care. Summary judgment is appropriate when, construing the evidence most strongly in favor of the nonmoving party: (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, that conclusion being adverse to the nonmoving party. Zivich v. Mentor Soccer Club, Inc. (1998),82 Ohio St.3d 367, 369-370, citing Horton v. Harwick Chem. Corp. (1995),73 Ohio St.3d 679, paragraph three of the syllabus. Our review of the appropriateness of summary judgment is de novo. See Andersen v. Highland House Co. (2001), 93 Ohio St.3d 547, 548.
The basic, undisputed facts in the case at bar are as follows. On July 18, 1997, Tammy L. Meeks, a certified daycare provider, took six-year old James Wright and his sister, Shanese, who was about ten years old, to an apartment complex swimming pool. Ms. Meeks knew a woman ("tenant") who lived at the complex. Ms. Meeks obtained the tenant's permission to go to the pool and was accompanied by the tenant to the pool. Ms. Meeks also had four other children under her care, ranging in age from five to six years old. Thus, Ms. Meeks had six children under her care. The tenant also brought her son, who was four or five years old, to the pool.
When they arrived at the pool, no one else was in the pool area. All seven children began swimming in the shallow end of the pool. No lifeguard was on duty, and a sign was posted indicating that fact. Ms. Meeks was aware that no lifeguard was on duty. Soon after the Meeks group arrived, about five to ten older children between the ages of ten and seventeen or eighteen began arriving at the pool. These children/teenagers were not accompanied by an adult.
Ms. Meeks testified that when the other, older children arrived, she wanted to leave, but the children under her care wanted to stay. So, Ms. Meeks told them they had five more minutes. James and another child under Ms. Meeks' care got out of the pool. James complained of a headache. James did not want to sit with the other child, so he pulled a chair to the other side of the pool (at the "deep end"). The pool was not very big. Ms. Meeks told James to sit down and to not get up. Ms. Meeks was standing at the shallow end of the pool and testified that one could see where James was sitting. Ms. Meeks testified that she did not see James get back into the pool.
Less than five minutes after seeing James in the chair, Ms. Meeks was telling her children to get out of the pool when another child told her that there was a shadow at the bottom of the deep end of the pool. James was at the bottom of the pool and, tragically, he had drowned. Ms. Meeks testified that she had no idea how James got into the deep end of the pool.
Appellant contends appellee was negligent in failing to enforce its policy which required that children under twelve years of age be supervised by adults while they were in the pool area. Appellant asserts that the failure of the apartment complex to keep older, unsupervised children out of the pool area complicated the efforts of Ms. Meeks to supervise James Wright. However, even if we accepted appellant's argument that appellee owed a duty of care to James Wright to enforce its policy, there was no evidence that the lack of an accompanying adult or that the mere presence of these older children caused or contributed to the death of James Wright.
There was no evidence that the other, older children complicated the efforts of Ms. Meeks (or the tenant, for that matter) to supervise the children under her care, including James. Ms. Meeks testified that she did not pay attention to the older children and that her focus was on the children under her care. Ms. Meeks testified:
"I can't focus on just one child, there's other children I'm looking over, you know, like a lifeguard, you look one way for a minute, check out the ones that's noticeably — he wasn't in the water. So I can't take my eye off the ones that's in the water. He said he's sitting on the lawn chair, so I can't focus myself from the ones that's in the water. He was sitting there. He was all right, * * * and they was in the water. And I was giving them then I was telling them come on when the kid came. It was like within seconds. I don't even remember. We wasn't even at this pool long enough." (Tr. at 67-68.)
Ms. Meeks was asked whether there was any roughhousing/pushing that day. Ms. Meeks responded:
"A. Nobody violent.
"Q. How about the kids that came in, were they violent?
"A. I don't know about them.
"Q. Well, they were in the pool your kids were swimming in, right?
"A. They was on the deep side.
 "Q. Okay. Were they violent with each other? * * * [W]ere they pushing, shoving, horseplay?
 "A. I wasn't really paying them no attention. My mind was on my children that's in the water.
 "Q. Were these kids in the deep end when James was on the deep end side in his lawn chair talking to the little kids, were the older kids in the deep end at that time?
 "A. I don't think so. They couldn't have been because the ball was just floating around there. * * * It floated over on the deep side where everybody was just standing there staring at it. Wasn't nobody on the deep side at all.
"Q. Nobody in the pool?
"A. In the water over there." (Tr. at 69-70.)
The above evidence does not raise a genuine issue of fact with regard to the role played by the older children in relation to the drowning of James Wright and the effect of their presence on Ms. Meeks' ability to properly supervise James. Ms. Meeks never testified that the older, unsupervised children affected her ability to supervise the children under her care, and there is no evidence raising an implication that such was the case. Again, there was simply no evidence that the presence of the older children somehow contributed to James' death. Hence, we do not even reach the issue of whether appellee could be liable for an alleged failure to enforce its policy that children under the age of twelve be accompanied by an adult.
In light of the above, summary judgment in favor of appellee was appropriate. Accordingly, appellant's assignment of error is overruled.
Having overruled appellant's sole assignment of error, the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
KLATT and PETREE, JJ., concur.