JOURNAL ENTRY AND OPINION
{¶ 1} Charles Mitchell appeals from a decision of the common pleas court granting summary judgment in favor of Parkridge Apartments, Ltd. (Parkridge) and Heyduk Landscape Design, Inc. (Heyduk). On appeal, he assigns the following error for our review:
 {¶ 2} The trial court erred, as (sic: a) matter of law, in granting summary judgment for the defendants-appellees.
 {¶ 3} Having reviewed the arguments of the parties and the pertinent law, we find no error and affirm the decision of the trial court. The apposite facts follow.
 {¶ 4} Mitchell was a tenant of Parkridge Apartments, Ltd. at the Parkridge Apartments located at 19520 Puritas Ave, Cleveland, Ohio. Harsax Inc. (Harsax) managed the apartment complex. Heyduk was retained to provide snow removal services at Parkridge for the winter of 1998 and 1999. Heyduk agreed to plow the parking lot and shovel the sidewalks whenever two inches of new snow accumulated on the ground or as requested by Parkridge.
 {¶ 5} On January 16, 1999, Heyduk plowed the parking lot and shoveled the sidewalks at Parkridge. Mitchell claims on January 17, 1999, sometime between 9 and 10:30 in the morning, he went out to start his car before going to church. He stated the pathway from his apartment to his vehicle that was parked in his handicapped parking space was icy and slippery with packed snow. The snow on both sides of the walkway was mounded. Because he perceived the walkway to be too slippery to traverse, he walked through the unplowed, mounded snow. After scraping off his car, he again traversed the unplowed area, crossed over the mounded snow, and slipped just before reaching his door. He fell and suffered a fractured wrist.
 {¶ 6} Mitchell filed suit against Parkridge, Harsax and Heyduk, alleging the premises were negligently maintained and the condition was created by the appellees.
 {¶ 7} Parkridge and Harsax filed a joint motion for summary judgment and submitted Mitchell's deposition in support of that motion. Heyduk also filed for summary judgment and submitted a weather report prepared by the National Climatic Data Center, which demonstrated the temperatures and snowfall for the days leading up to and including the day of the incident; it also offered the affidavit of Nicholas Gidor, an employee, who averred the parking lot was plowed the day before Mitchell's fall and Parkridge did not request plowing on the day he fell.
 {¶ 8} Mitchell filed a brief in opposition, alleging the appellees created a more hazardous condition because the walkway was poorly cleaned.
 {¶ 9} The appellees responded and the trial court granted summary judgment in favor of Parkridge, Harsax and Heyduk.
 {¶ 10} The sole assigned error raises the question of whether a genuine issue of material fact exists so that the matter should proceed to trial.
 {¶ 11} Appellate review of summary judgments is de novo.[1]
Pursuant to Civ.R. 56, summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor.[2] The party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.[3]
 {¶ 12} Once the moving party satisfies its burden, the nonmoving party may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.[4]
 {¶ 13} Under Ohio law, ice and snow are a natural part of wintertime in Ohio as is the freezing and refreezing of ice and snow.[5]
However, an owner or occupier of business premises may be liable for the unnatural accumulations of ice and snow where there is evidence of an intervening act by the landlord/owner which perpetuates or aggravates the pre-existing, hazardous presence of ice and snow.[6]
 {¶ 14} We also note our previous decision in Theobald v. NormandyTowers,[7] in which we stated [a]n accumulation of ice does not become `unnatural' merely because of a party's assertion. The fact that snow was removed from the lot the previous day, and ice subsequently formed, does not per se constitute negligent snow removal. Appellant failed to attach expert testimony demonstrating that the ice was the result of negligent snow removal.
 {¶ 15} Additionally, when the top portion of a natural accumulation of ice and snow is plowed, the accumulation of snow and ice that remains is still a natural accumulation.[8]
 {¶ 16} Mitchell alleges the unnatural accumulation was caused by run-off water dripping down from an overhang. However, when snow is removed, it has to be placed somewhere, and a certain natural run-off of water is to be expected.[9]
 {¶ 17} In his deposition, Mitchell stated the walkway to his vehicle appeared to be snow covered and icy. Because he felt it unsafe to walk on the portion of the parking lot that had been plowed, he traversed over piled up snow to get to his vehicle and again to get back to his apartment. It was on his return that he fell. He also stated he did not know the last time the parking lot had been plowed.
 {¶ 18} The weather report submitted and used by both parties established that as of January 15, 1999, 14 inches of snow had fallen, 1.6 inches of which had fallen on that day. The temperature the following day had reached 39 degrees with no additional snow fall. The snow depth was twelve inches. On January 17, 1999, the snow depth was nine inches; the low was 23 degrees and the high reached 47 degrees.
 {¶ 19} In his affidavit, Gidor testified Heyduk plowed the parking lot and shoveled the sidewalks at Parkridge on January 16, 1999 and was not called back to plow prior to Mitchell's fall.
 {¶ 20} Our review of the evidence presented leads us to the conclusion that Mitchell failed to establish the ice he slipped on was anything other than a natural accumulation or that Parkridge had any superior knowledge of the danger. We recognize that a property owner may assume a duty to remove natural accumulations of ice and snow by the terms of a contract. However, in order for Mitchell to show that Parkridge breached a duty of care, he had to show either that Parkridge, its officers, or employees were responsible for the hazard complained of; or that at least one of such persons had actual knowledge of the hazard and neglected to give adequate notice of its presence or remove it promptly; or that the danger had existed for a sufficient length of time to justify a reasonable inference that the failure to warn against it or remove it was due to a lack of ordinary care.[10] Mitchell failed on each of these alternative requirements. Because no genuine issue of material fact remains, Parkridge, Harsax and Heyduk are entitled to judgment as a matter of law. Accordingly, Mitchell's assigned error is without merit and the decision of the trial court is affirmed.
Judgment affirmed.
It is ordered that appellee recover of appellant their costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
FRANK D. CELEBREZZE, JR., J., and COLLEEN CONWAY COONEY, J., CONCUR.
N.B. This entry is an announcement of the court's decision. See App.R. 22(B), 22(D) and 26(A); Loc.App.R. 22. This decision will be journalized and will become the judgment and order of the court pursuant to App.R. 22(E) unless a motion for reconsideration with supporting brief, per App.R. 26(A), is filed within ten (10) days of the announcement of the court's decision. The time period for review by the Supreme Court of Ohio shall begin to run upon the journalization of this court's announcement of decision by the clerk per App.R. 22(E). See, also, S.Ct.Prac.R. II, Section 2(A)(1).
[1] Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102.
[2] Zivich v. Mentor Soccer Club (1998), 82 Ohio St.3d 367; Horton v.Harwick Chem. Corp. (1995), 73 Ohio St.3d 679.
[3] Dresher v. Burt (1996), 75 Ohio St.3d 280.
[4] Civ.R. 56(E); Serrano v. McCormack Baron Management, Inc. (Dec. 7, 2000), Cuyahoga App. No. 77970, quoting Mootispaw v. Eckstein (1996),76 Ohio St.3d 383.
[5] Moore v. Lupica Towers (Nov. 13, 1997), Cuyahoga App. No. 71551.
[6] Porter v. Miller (1983), 13 Ohio App.3d 93; Bittinger v. Klotzman
(1996), 113 Ohio App.3d 847.
[7] (April 8, 1883), Cuyahoga App. No. 62106.
[8] Coletta v. University of Akron (1988), 49 Ohio App.3d 35.
[9] Hoenignman v. McDonald's Corp. (Jan. 11, 1990), Cuyahoga App. No. 56010.
[10] Baud v. Cleveland Clinic Foundation (1996), 113 Ohio App.3d 245, citing, Johnson v. Wagner Provision Co. (1943), 141 Ohio St. 584.