[Cite as *Alexander v. Snow Automotive Repair*, 2013-Ohio-1564.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 99055**

---

# WALLACE ALEXANDER

### PLAINTIFF-APPELLANT

vs.

# SNOW AUTOMOTIVE REPAIR, ET AL.

### DEFENDANTS-APPELLEES

---

## JUDGMENT:
## AFFIRMED IN PART, REVERSED IN PART,
## AND REMANDED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-745980

**BEFORE:** Jones, P.J., S. Gallagher, J., and E.A. Gallagher, J.

**RELEASED AND JOURNALIZED:** April 18, 2013

**ATTORNEYS FOR APPELLANT**

Ronald I. Frederick
Michael L. Berler
Ronald Frederick & Associates
1370 Ontario Street
Suite 1240
Cleveland, Ohio 44113


**FOR APPELLEES**

**For Harold M. Cohen and Auto-Truck-Motorcycle Title Reclamation**

Harold M. Cohen
P.O. Box 221152
Beachwood, Ohio 44122

LARRY A. JONES, SR., P.J.:

{¶1} Plaintiff-appellant, Wallace Alexander, appeals from the trial court's judgments (1) denying his motion for summary judgment and (2) granting the motion for summary judgment of defendants-appellees Harold Cohen and Auto-Truck-Motorcycle Title Reclamation (collectively "Auto Title"). We affirm in part, reverse in part, and remand.

## I. Procedural History

{¶2} In January 2011, Alexander initiated this action against defendants-appellees Snow Automotive Repair, its owner Melvin Hicks (collectively "Snow Automotive"), and the Auto Title defendants. The Auto Title defendants answered and counterclaimed. In the counterclaim, the Auto Title defendants sought three "declarations" and expenses for having to defend against Alexander's "false claims." Alexander replied to the counterclaim.

{¶3} Alexander was granted a default judgment against the Snow Automotive defendants in the amount of $21,454.34 for numerous violations of R.C. 1345.02 and 1345.03, Ohio's Consumer Sales Practices Act.

{¶4} The Auto Title defendants filed a motion for summary judgment on Alexander's complaint and their counterclaim. Alexander opposed the defendants' motion, and also filed his own motion for summary judgment, which the Auto Title defendants opposed. The trial court granted the Auto Title defendants' motion for summary judgment and denied Alexander's motion for summary judgment.

## II. Facts

**{¶5}** In his complaint, Alexander alleged that in August 2009, he took his 1998 Cadillac DeVille to Snow Automotive for repair work. Snow Automotive estimated that the repair work would cost $2,700. Alexander agreed and made a $300 down payment for the repairs.

**{¶6}** In December 2009, Snow Automotive prepared a second estimate and repair order, backdated it to August, and charged Alexander an extra $282 for further repairs. Alexander agreed to the additional charge. Further, Snow Automotive requested that Alexander pay a second $300 down payment for the repairs, which Alexander agreed to and paid.

**{¶7}** In February 2010, Snow Automotive informed Alexander that it needed another payment for the work, and an additional $100 was paid on behalf of Alexander by the Youngstown Veterans Outreach. Further, that same month, Alexander paid $2,100 for the repair work. Thus, Alexander claimed that by February 2010, he had paid $2,800 of the $2,982 charge for the repairs.

**{¶8}** By March 2010, with the repairs still not completed, Alexander inquired of Snow Automotive as to the delay, and received numerous reasons as to why the repairs were still not completed. From March 2010 through May 2010, Alexander demanded that his vehicle be returned to him.

**{¶9}** In May 2010, Snow Automotive informed Alexander that it would be charging him an additional $500 to install an oil pan in the vehicle and that the vehicle would not be

returned to Alexander until he paid that extra amount. Alexander claimed that he neither approved nor authorized that work or charge.

{¶10} According to Alexander, during the course of his dealings with Snow Automotive he never received notification of (1) whether, and under what conditions, his deposits would be refundable, (2) an anticipated completion date of the repairs, or (3) additional costs he might incur, including storage fees. Alexander further claimed that he never received a written itemized list of the repairs that were actually completed.

{¶11} The Ohio Attorney General's Office became involved in the case. According to Alexander, in June 2010, Hicks, the owner of Snow Automotive, told a representative of the attorney general's office that Alexander still owed the business $1,278, which included a charge for storage fees.

{¶12} That same month (June 2010), the Auto Title defendants sent Alexander a letter-invoice stating that his vehicle had been "left unclaimed and presumed abandoned" for over 15 days. The letter further advised that Alexander owed Snow Automotive $9,742, which included (1) storage fees totaling $7,175, calculated from August 2009 through June 2010, at $25 per day, and (2) $2,442 in repairs.

{¶13} The letter advised that "[i]f the balance is not paid in full within 15 days * * * [Snow Automotive] will request the Ohio Bureau of Motor Vehicles to transfer the certificate of title for the aforementioned vehicle from your name to theirs to settle the debt." The letter also stated that "[i]f you want your vehicle please make arrangements with [Snow Automotive] to pay the charges incurred and/or to settle your debt and/or

refute the claim."

{¶14} After receiving the letter, Alexander spoke with a representative from the Ohio Attorney General's Office.

{¶15} According to Alexander, in July 2010, defendant Hicks told a representative of the attorney general's office that Alexander still owed $500 and the vehicle would not be released to him until he paid that amount.

{¶16} Relative to this appeal, Alexander alleged in his complaint that (1) he was a consumer under the Consumer Sales Practices Act and the Fair Debt Collection Practices Act and (2) Auto Title was a debt collector as defined under the Fair Debt Collection Practices Act, and a supplier as defined under the Consumer Sales Practices Act.

{¶17} Alexander asserted claims for relief against the Auto Title defendants for violations of the Consumer Sales Practices Act, the Uniform Commercial Code, the Fair Debt Collection Practices Act, and R.C. 4505.101. He also asserted claims for relief against the Auto Title defendants for conversion, civil conspiracy, and civil liability for criminal acts.

III. Law and Analysis

{¶18} Appellate review of summary judgment is de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 1996-Ohio-336, 671 N.E.2d 241. The Ohio Supreme Court stated the appropriate test in *Zivich v. Mentor Soccer Club*, 82 Ohio St.3d 367, 369-370, 1998-Ohio-389, 696 N.E.2d 201, as follows:

Pursuant to Civ.R. 56, summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor. *Horton v. Harwick Chem. Corp.* (1995), 73 Ohio St.3d 679, 1995-Ohio-286, 653 N.E.2d 1196, paragraph three of the syllabus. The party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 292-293, 1996-Ohio-107, 662 N.E.2d 264, 273-274.

{¶19} It is well established that the party seeking summary judgment bears the burden of demonstrating that no issues of material fact exist for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1987). The record on summary judgment must be viewed in the light most favorable to the opposing party. *Williams v. First United Church of Christ*, 37 Ohio St.2d 150, 151-152, 309 N.E.2d 924 (1974).

{¶20} In moving for summary judgment, the "moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact or material element of the nonmoving party's claim." *Dresher v. Burt*, 75 Ohio St.3d 280, 293, 1996-Ohio-107, 662 N.E.2d 264.

Auto Title's Motion for Summary Judgment

{¶21} In its motion, the Auto Title defendants contended that they were not a supplier under the Consumer Sales Practices Act, or a debt collector under the Federal

Debt Collection Practices Act. They further contended that they did not violate R.C. 4505.101, did not charge an excessive fee, and that they were properly registered to conduct business in Ohio.

{¶22} According to the Auto Title defendants, they "merely provide[d] information, as a third party, required by ORC 4505.101, and then act[ed] as a runner to the title bureau(s) * * * and charge[d] a fee for doing so to their customer."

{¶23} Further, according to the defendants, they were not acting as a debt collector; rather, they merely mailed a letter to Alexander stating what was due and owing by him to Snow Automotive, and filed an affidavit pursuant to R.C. 4505.101.

{¶24} In support of their motion, the Auto Title defendants submitted (1) the unclaimed motor vehicle affidavit they filed with the Ohio Bureau of Motor Vehicles, (2) a printout from the Ohio Secretary of State's website showing that the business was registered with that office, (3) the letter-invoice they sent to Alexander, (4) two repair orders prepared by Snow Automotive for the work that was to be done to Alexander's vehicle, and (5) another case in which they were named defendants, involving the same issues, and summary judgment was granted in their favor.

Alexander's Motion for Summary Judgment

{¶25} In his motion, Alexander maintained that the Auto Title defendants engaged in the collection of a debt and were suppliers and, thus, were subject to the Consumer Sales Practices Act and the Federal Debt Collection Practices Act. Alexander contended that the defendants violated both Acts.

**{¶26}** Alexander submitted the following in support of his motion: (1) the two repair orders prepared by Snow Automotive, (2) the "complaint details" prepared by the Ohio Attorney General, (3) the letter-invoice sent to him by the Auto Title defendants, (4) the certificate transferring title from him to Snow Automotive, (5) portions of Cohen's deposition testimony, (6) two affidavits he averred, (7) a check purportedly written on his behalf for the repairs to defendant Hicks in the amount of $2,100, (8) the unclaimed motor vehicle affidavit filed by the Auto Title defendants, (9) the receipt issued by the Cuyahoga County Clerk of Courts Office for filing the transfer of title, (10) the power of attorney issued by Snow Automotive to the Auto Title defendants to apply for the certificate of title, (11) the investigative report of the South Euclid Police Department, (12) an odometer reading disclosure statement filed by Snow Automotive, and (13) an internet printout showing the market value of similar Cadillacs.

Trial Court's Judgment

**{¶27}** In denying Alexander's motion for summary judgment and granting the Auto Title defendants' motion for summary judgment on Alexander's complaint and their counterclaim, the trial court stated that it "implicitly found" under the "limited circumstances present in this case," that (1) the Auto Title defendants were not a supplier, (2) sending a certified letter is not a violation of the Consumer Sales Practices Act, and (3) sending a letter does not determine that the sender is a debt collector.

**{¶28}** Alexander assigns the following assignments of error in light of the trial court's judgment:

[I.] The trial court erred in ruling that defendants Harold M. Cohen and Auto-Truck-Motorcycle Title Reclamation are not debt collectors under the Fair Debt Collection Practices Act ("FDCPA").

[II.] The trial court erred by failing to find or consider the substantial evidence of deceptive behavior and statutory breaches by defendants Harold M. Cohen and Auto-Truck-Motorcycle Title Reclamation were violation of the FDCPA.

[III.] The trial court erred in finding that defendants Harold M. Cohen and Auto-Truck-Motorcycle Title Reclamation did not violate the Consumer Sales Practices Act ("CSPA").

{¶29} Thus, the issue for our determination in this appeal is whether the Auto Title defendants were a (1) debt collector under the Federal Debt Collection Practices Act and/or (2) a supplier under the Consumer Sales Practices Act.

The Federal Debt Collection Practices Act

{¶30} The Act defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C. 1692a(6).

{¶31} As previously mentioned, in finding that Auto Title was not a debt collector, the trial court stated that it "implicitly" found, under the "limited circumstances present in this case only," that "sending a letter does not determine that the sender is a 'debt collector.'"  The court did not elaborate on the limiting circumstances upon which it based its finding.

{¶32} We agree with the trial court that sending a letter does not, in and of itself, mean that the sender is a debt collector. But under the facts of this case, we find that a genuine issue of material fact remains as to whether Auto Title was acting as a debt collector. We have been unable to find any case law addressing this specific factual scenario, but we note the following in support of our decision.

{¶33} The Auto Title defendants claim that their business was not a debt collection business, but rather a business engaged in processing title paperwork under R.C. 4505.101. Said section provides, in relevant part, the following:

> (A) The *owner* of any repair garage or place of storage in which a motor vehicle * * * has been left unclaimed for fifteen days or more following completion of the requested repair or the agreed term of storage may send by certified mail, return receipt requested, to the last known address of the owner a notice to remove the motor vehicle. If the motor vehicle remains unclaimed by the owner for fifteen days after the mailing of the notice, and the person on whose property the vehicle has been abandoned has received the signed receipt from the certified mail or has been notified that the delivery was not possible, the person shall obtain a certificate of title to the motor vehicle in the person's name in the manner provided in this section.

(Emphasis added.)

{¶34} We find that two facts create a genuine issue as to whether Auto Title was acting as a debt collector. First, R.C. 4505.101 contemplates a letter from the "owner" of the repair shop. The letter-invoice did not come from Snow Automotive. Rather, it came from the Auto Title defendants, who identified themselves as a "3rd party." Second, the letter-invoice did not merely state that the vehicle had been left unclaimed, and that if it remained so, Snow Automotive would obtain a certificate of title to it, but it

also stated that a debt was due and owing.[1]   These two circumstances, considered in light of the protracted and acrimonious dealings between Alexander and Snow Automotive, create a genuine issue of material fact as to whether Auto Title was acting as a debt collector on behalf of Snow Automotive.

The Consumer Sales Practices Act

{¶35} We next consider whether the Consumer Sales Practices Act applied to the Auto Title defendants vis-a-vis Alexander.

{¶36} A "consumer transaction" is defined as "a sale, lease, assignment, award by chance, or other transfer of an item of goods, a service, a franchise, or an intangible, to an individual for purposes that are primarily personal, family, or household, or solicitation to supply any of these things."   R.C. 1345.01(A).

{¶37} The Auto Title defendants did not provide "a service" to Alexander for a "personal, family, or household" purpose. The Act therefore did not apply to the Auto Title defendants relative to Alexander.

## IV.   Conclusion

---

[1]At oral argument, the Auto Title defendants argued that the statute required that the debt be listed.   The remaining portion of subsection (A) of the statute requires that the "expenses incurred with the motor vehicle" be set forth in an affidavit to "authorize the issuance of a certificate of title for the motor vehicle."   The affidavit is then required to be presented to the clerk of courts of the county in which the repair garage is located so that the clerk can "issue a certificate of title, free and clear of all liens and encumbrances, to the owner of the place of storage."   R.C. 4505.101(A).   The statute makes no mention of informing the owner of the abandoned vehicle of expenses the shop owner incurred with the vehicle.

**{¶38}** In light of the above, Alexander's first and second assignments of error are sustained to the extent that the trial court erred in finding that there was no genuine issue of material fact as to whether the Auto Title defendants were acting as a debt collector in this case. Because we find that there is a genuine issue of material fact on this point, we remand so that the matter can proceed to trial on that issue, and, if it is found that the defendants were acting as a debt collector, whether they committed violations of the Federal Debt Collection Practices Act.

**{¶39}** The third assignment of error is overruled, because we find that the Auto Title defendants did not engage in a consumer transaction with Alexander.

**{¶40}** Judgment affirmed in part, and reversed in part. Case remanded for further proceedings consistent with this opinion.

It is ordered that appellant recover of appellees costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

LARRY A. JONES, SR., PRESIDING JUDGE

SEAN C. GALLAGHER, J., and
EILEEN A. GALLAGHER, J., CONCUR